# Perot's Appeal.

1. The 7th section of the 5th article of the constitution provides, that the prothonotary of the courts of Common Pleas of Philadelphia county shall receive a fixed salary, to be determined by law and paid by said county, and in the next clause provides, that the fees collected in such office shall be paid into the county treasury: *Held*, that these clauses should be construed together and interpreted to mean that until the legislature shall fix the salary of the prothonotary, the fees of his office are not to be paid into the county treasury.

2. The place of the clause as to fees, its context and connection, and the reason, intent and spirit of the provision, all unite in condemning as illogical and unreasonable the view that this clause must be dislocated from its place and connection, and treated as an independent and absolute provision, for the immediate payment of the fees of the office into the county treasury, and this conclusion derives force from its relation to other parts of the constitution and schedule.

3. The 18th section of the Act of March 21st 1876, relative to the salaries of county officers, which postpones the operation of the act until the expiration of the terms of the incumbents, is constitutional.

February 21st 1878. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and TRUNKEY, JJ. WOODWARD, J., absent.

Appeal from the Court of Common Pleas, No. 3, of *Philadelphia county*: Of January Term 1877, No. 208. In equity.

This was the appeal of T. Morris Perot and others, citizens and taxpayers of the city of Philadelphia, from the decree of the court refusing an injunction against William B. Mann, prothonotary of the Courts of Common Pleas of Philadelphia county.

The bill alleged in substance: That in the 7th section of the 5th article of the constitution of Pennsylvania, which went into effect January 1st 1874, it is provided as follows, viz.: "For Philadelphia there shall be one prothonotary's office and one prothonotary for all of said courts, to be appointed by the judges of said courts, and to hold office for three years, subject to removal by a majority of the said judges. The said prothonotary shall appoint such assistants as may be necessary and authorized by said courts, and he and his assistants shall receive fixed salaries, to be determined by law and paid by said county. All fees collected in said office, except such as may be by law due to the Commonwealth, shall be paid by the prothonotary into the county treasury."

That by the 23d section of the schedule to said constitution, it is provided that the prothonotary of the Courts of Common Pleas of Philadelphia should be first appointed by the judges on the first Monday of December 1875 and that on that day the said judges appointed the defendant, William B. Mann, prothonotary, who thereupon entered upon the duties of said office.

That on the 21st of March 1876, an act was passed entitled "An Act to carry into effect section 5 of article 14 of the constitution, relative to the salaries of county officers, and the payment of fees

received by them into the state or county treasury in counties containing over one hundred and fifty thousand inhabitants," by which act it was provided that the annual salary of the prothonotary should be $10,000. That by the 18th section of said act it was provided that the same should take effect on the expiration of the term of the present incumbents of county offices. The bill averred, however, that this last provision was of no avail to relieve the said prothonotary from paying the fees received into the county treasury, but that nevertheless he had neglected and refused to pay over the fees collected, and had retained and appropriated the same to his own use.

The bill prayed that the said Willian B. Mann might be restrained from further appropriating said fees to his own use, and required to pay the same into the city treasury; for an account of fees previously collected, and such other relief as might be necessary in the premises.

The defendant demurred to the bill, assigning for cause that it did not show he was retaining the fees without authority of law, and that the Act of March 21st 1876 did not affect the defendant, because he was an incumbent of a county office, and the act did not apply until the expiration of his term.

The court refused the injunction and entered judgment for the defendant; opinions being filed by Ludlow, P. J., and Yerkes, J. From this decree this appeal was taken.

*T. H. Speakman* and *E. Spencer Miller*, for appellants.—The direction of the constitution that the fees shall be paid into the county treasury is peremptory and unconditional in its terms, and no legislation was needed to carry it into effect. But if it was needed the fees certainly ceased when the salary was provided.

[Chief Justice AGNEW.—Do you contend that prior Acts of Assembly were *ipso facto* repealed by the adoption of the new constitution?]

We contend that no legislation was required. It was simply necessary to carry out the direction of the constitution, which had fixed a limit to the time when fees should be paid. We maintain that it was not competent for the legislature to strike out that limit and fix another. The legislature so fixed the salaries; anything else it did was work of supererogation and it therein transcended its power. The legislature not only neglects to obey the constitution, but it may repeal the law. Will not the penalty be then that the constitutional provision must fall?

*Francis E. Brewster, F. Carroll Brewster* and *George W. Biddle*, for appellee, were not called on.

Chief Justice AGNEW delivered the opinion of the court, February 25th 1878.

The question in this case is a very plain and simple one. What is the interpretation to be given to the penultimate clause of the seventh section of the fifth article of the constitution of 1873, relating to the pay of the prothonotaries? The whole section reads thus: "For Philadelphia, there shall be one prothonotary's office, and one prothonotary for all said courts, to be appointed by the judges of said courts, and to hold office for three years, subject to removal by a majority of the said judges; the said prothonotary shall appoint such assistants as may be necessary and authorized by said courts; and he and his assistants shall receive fixed salaries, to be determined by law and paid by said county; all fees collected in said office, except such as may be by law due to the Commonwealth, shall be paid by the prothonotary into the county treasury. Each court shall have its separate dockets, except the judgment docket, which shall contain the judgments and liens of all the said courts, as is or may be directed by law." The punctuation I have compared with three copies of the constitution, the most accurate known to me, and it will be seen that the penultimate clause as to fees is a part of the preceding sentence, and closes with a period. The question is, is this clause to be viewed as a distinct, separate and independent provision, standing alone in its operation, and not affected by the preceding part of the same sentence? To state the proposition is to discover its fallacy. Clearly its interpretation is to be gathered from its place, its preceding context, its intent, and its relation to other parts of the constitution. It follows immediately in close connection, and dislocated by no period, the clause that "he (the prothonotary) and his assistants shall receive *fixed salaries*, to be determined *by law* and paid by the said *county*." Thus the constitution itself refers the matter of the fixed salary to the legislature. As a consequence, the second section of the schedule is operative, for until the legislature fix the salary, the law of compensation, to wit, his right to the legal fees, continues; for, until that event, neither the law nor his right is inconsistent with the terms of the constitution. This second section reads thus: "All *laws* in force in this Commonwealth at the time of the adoption of this constitution, *not* inconsistent therewith, and all *rights*, actions, prosecutions and contracts shall continue, as if this constitution had not been adopted." This section has been considered heretofore. See Lehigh Iron Co. *v.* Lower Macungie Township, 31 P. F. Smith 482, and Watson *v.* C. & D. River Railroad Co., 2 Norris 254. Thus both the *law* and the *right* to the fees remain. Another significant fact is found in the context and the clause itself. The salary, when fixed, must be paid *by* the *county ;* so the fees are to be paid *to* the *county*. The intent is manifest. The schedule, which is the transition way from

the old to the new form of government, provides for the *status quo* until the laws necessary to give effect to the new, shall be passed by the legislature; and, to prevent escape, enjoins the duty of passing such laws, in the thirty-first section, thus : "The General Assembly, at its first session, or as soon as may be, after the adoption of this constitution, *shall* pass such laws as may be necessary to carry the same into *full* force and effect." This duty, demanded by the voice of the people themselves, is also enforced by the oath of office. The thought of the section is therefore manifest. Legislation is provided for to fix the salaries, and then the *county* must pay them; until that time, the schedule will maintain the *status quo;* and *then,* as the *consideration* for the payment of the salaries *by* the county, the fees of office shall be paid *to* the county. Thus the two clauses, having their natural relation in the same sentence, harmonize with each other. On the other hand, if we disjoint the sentence, insert a period where there is none, and treat the clause as to the fees as independent, absolute and immediate, so as to carry the fees of office into the treasury at once, we do the public, as well as the officer, a great wrong. Then we have an office, created by the constitution, dependent on the mere voluntary service of some one who will accept it without fee or reward, until the salary be fixed by a law, become responsible to all his assistants for their compensation, incur the risks of, and liability for, their errors, and give a bond, with sureties in a large sum, to be answerable for the performance of the duties and the mishaps of the office. Did the convention intend that the public should be imperilled by the want of officers, or the officers to be unpaid for services, until the legislature might act ? Clearly not; the consequences are too grave. Hence they coupled the two clauses, that they might run together and have a plain meaning, intending to provide for the meanwhile in the schedule, by preserving the *status quo* until the legislature should perform the duty enjoined in the thirty-first section of the schedule.

But it is argued that the legislature may fail to pass a law fixing the salaries, and thus suffer the evil to continue, which the provision for payment of fees into the county treasury was intended to remedy. True, the time may be delayed, but this was a fact which was in view when the convention committed the subject to the legislature; and the argument supposes that the members of that body are void of conscience and willing to violate their oaths of office. The constitution cannot be administered on any such supposition. We are bound to concede honesty of purpose to them, as we would ask it to be awarded to ourselves. But the supposition is contradicted by the fact, for we find that the Assembly passed the requisite law on the 31st day of March 1876, Pamph. L. 13. Now, when we remember the immense number of legislative acts necessary to adjust the affairs of the state to the terms of the new con-

stitution, we cannot suppose any violation of duty in this respect. In this connection complaint is made of the eighteenth section, which postpones the operation of the act until the terms of the then incumbents of county offices should expire. We must believe the legislature had good reasons for this, some of which we can easily understand. The expiration of existing terms, and the incoming of new officers, would enable existing laws to have their well-known effect, and their accounts with the state could be easily adjusted. But break off in the middle of a term, and the old and the new laws must have a legal and proper adjustment, both as to the accounts for fees and the pro rata of salaries. This would require some legislation, and even then complications might arise, with their offspring of litigations. But with the expiration of the term, the old law would expire, and with the beginning of the new term, the new system would arise, and the old and new would be harmonized.

It is also said the 18th section is unconstitutional. But this is answered by our interpretation of the clause as to fees; for if they are not to go into the county treasury until the salary is fixed, the law and the constitution are in harmony. They would be in disorder only, if we give the clause an immediate, independent and absolute interpretation.

The 29th section of the schedule, as to the compensation of county officers in office at the adoption of the constitution, has no relation to the case before us. Mr. Mann has been since appointed, and his case is necessarily governed by the section under which he was appointed—7th section, 5th article.

So the 5th section of the 14th article, relating to county officers, does not touch this case. It is the general provision for the compensation of county officers, while the case before us comes specially under the 7th section of the 5th article, already noticed. But the 5th section of the 14th article is *in pari materia*, and confirms conclusively the interpretation we have given to the 7th section of the 5th article. Thus it says: "The compensation of county officers *shall be regulated by law*, and all county officers who are, or may be *salaried*, shall pay all fees, which they may be authorized to receive, into the treasury of the county or state, as may be directed by law. In counties containing over 150,000 inhabitants, all county officers shall be paid by salary, and the salary of any such officer and his clerks, heretofore paid by fees, shall not exceed the aggregate amount of fees earned during his term and collected by or for him." Thus the former part of the section so connects the salary and the fees, as to show that the regulation of the salary must precede the payment of the fees into the treasury. The latter part makes payment by salary compulsory in counties having a population over 150,000. Upon the census of 1870, this would

[Perot's Appeal.]

apply to Allegheny, Luzerne and Philadelphia, and was approximated by Lancaster and Schuylkill.

Thus, a full consideration of section 7th, article 5th of the new constitution, leads to a clear result. The place of the clause as to fees, its context and connection, and the reason, intent and spirit of the provision, all unite in condemning, as illogical and unreasonable, the view that this clause must be dislocated from its place and connection, and treated as an independent and absolute provision for the immediate payment of the fees of the office into the county treasury; and this conclusion derives force from its relation to other parts of the constitution and the schedule.

Decree affirmed, with costs to be paid by the ·appellants, and the bill of the plaintiffs finally dismissed.