Bowyer v. Camden.

THE STATE, CHARLES P. BOWYER ET AL., PROSECUTORS,
v. THE CITY COUNCIL OF THE CITY OF CAMDEN.

THE STATE, WILLIAM T. REED ET AL., PROSECUTORS, v.
THE SAME. `

1. An act of the legislature which in terms applies to all cities, must be construed to apply to all, and to repeal all inconsistent legislation. If any city is excepted from its operation, either by expression or by implication, it would be a special law, and therefore unconstitutional. The implication in such case will not be made that an exception is intended. The interpretation which validates the law will be adopted. Therefore, the act of March 25th, 1881, applies to Camden.
2. Under the provisions of the city charter of Camden, the receiver of taxes must collect all taxes which are not made by the sale of lands; he has no authority to sell lands for taxes, and no duty to perform with respect to assessments for street and sewer improvements.
3. The city treasurer is the officer to whom payment of assessments must be made, and in whose name suit must be brought to compel payment, if necessary so to do.
4. The seventieth section of the city charter applies both to taxes and assessments, and authorized the city council to pass the resolution directing the city solicitor to proceed and sell lands to enforce payment of any taxes or assessments which may be a lien thereon.
5. So far as the ordinances of the city council impose upon the city solicitor the duties which are required to be performed by the receiver of taxes, they are unauthorized and illegal.
6. Under the fourth section of the Martin act, the city treasurer is the officer whose duty it is to collect the re-adjusted taxes, assessments and water rents, and sell lands for the non-payment thereof.
7. In the case specified by section 13 of the Martin act, the city council may elect to proceed under the city charter, and in that event the provisions of the city charter must regulate the proceedings.

On *certiorari.*

Argued at June Term, 1887, before Justices DEPUE, VAN SYCKEL and MAGIE.

For the prosecutors, *Herbert A. Drake, James E. Hays, Joseph Coult* and *Samuel H. Grey.*

For the defendants, *J. Willard Morgan*, *David J. Pancoast* and *Peter L. Voorhees*.

The opinion of the court was delivered by

VAN SYCKEL, J.   These cases, which were argued together, bring up for review an ordinance revising the ordinances of the city of Camden, passed December 30th, 1886, and also the following resolution of the common council of said city, passed March 31st, 1887 :

"*Resolved*, That the city solicitor be and he is hereby authorized and directed to proceed and sell, according to law, all lands, tenements and real estate, to enforce the payment of any taxes or assessments which may be a lien thereon, according to law."

The cases may be disposed of by considering :

First, whether the revised ordinances certified have been published according to law ?

Second, whether sections 7, 29, 31, 64, 88, 89, and 143 of the revised ordinances, or any of them, are in any respect illegal ?

Third, whether the common council could lawfully authorize the city solicitor to sell lands for unpaid taxes and assessments ?

The twenty-ninth section of the city charter prescribes the manner of publishing ordinances, with the proviso that whenever the city council shall cause a revision of the city ordinances to be made, and shall direct the same to be published in a printed volume, it shall not be necessary to publish such revised ordinances in a newspaper.

The ordinance under review was published as directed by this proviso.

The *certiorari* commands the city council to return the proof of the publication of the certified ordinance.   The only publication that affirmatively appears by the return to have been made is the publication in the printed volume.   The presumption under this return must be that no other pub-

lication was made.  *State, Wilkinson, pros.,* v. *Trenton,* 7 *Vroom* 499.

By an act entitled "An act concerning the publication of ordinances, financial statements and other public notices," approved March 25th, 1881, it. is provided that in all cities of this state the ordinances passed shall be published in at least one newspaper of the city for at least two insertions before said ordinance shall become binding and operative. *Pamph. L.* 1881, *p.* 295.

The said act further provides that all acts or parts of acts in conflict with it are repealed.

It is contended that this general law does not repeal the special provisions of the city charter.  *Sheridan* v. *Stevenson,* 15 *Vroom* 371 is relied upon to support this view.

It will be observed that the statute, which was claimed in that case to have the repealing effect, did not in terms relate to cities, but was a general tax law.  The court there held that it was a question of intention, and that the repealing clause must be so expressed as to manifest the legislative intention to include all acts, whether special, or local, or otherwise, inconsistent with the provisions of the act.

The rule is correctly stated by Chancellor Green in *Industrial School District* v. *Whitehead,* 2 *Beas.* 290 :

" Every statute is by implication a repeal of all prior statutes, so far as it is repugnant thereto, and if the subsequent statute be not repugnant in all its provisions to a prior one, yet if it was clearly intended to prescribe the only rule that should govern in the case provided for, it repeals the original act."

This case was cited, and the rule therein adopted was approved in this court in *State* v. *Commissioners of Railroad Taxation,* 8 *Vroom* 228.

The act of 1881 provides that in all the cities of this state the ordinances shall be published as in said act provided.  No city is excepted from its operation, and it provides the only rule that is to govern the subject.  Every city is declared to be subject to that rule, and, therefore, necessarily, all special

laws in city charters repugnant thereto are swept away by the repealing clause. Aside from these cases, it being a question of legislative intent, there can be no doubt whatever that it was intended to apply to the city of Camden.

The act of 1881 was placed upon the statute book by the legislature in the form of a law, and it must be presumed that the legislature intended that it should have the force and sanction of a law. Giving it effect in all cities according to the clear and express language in which it is enacted, it is a valid and constitutional law. But if the city of Camden is excepted from its operation, then it is a special local law, and inoperative because in contravention of the constitutional provision with respect to special legislation. *Closson* v. *Trenton,* 19 *Vroom* 438.

That the legislature intended it to be the law on this subject there can be no doubt, and inasmuch as it cannot be the law without applying to the city of Camden, the intention to apply it to that and every other city must have led to its passage. The legislature could not make a valid law excepting some cities, or one city, save in those instances where such law will bring about uniformity, and it cannot do by implication what it could not do by expression. Nor can the courts effect by construction what the legislature cannot do by express words. If, by indicating a purpose to exempt certain counties from its operation, the legislature can legally pass an act which shall apply to only one or more counties, and not to all, the constitutional provision in question will afford the most slender barrier against special legislation. The guide to interpretation is legislative intent.

The supreme folly of intending to pass a special and, therefore, nugatory act, will not be imputed to the law-maker when the language used is broad enough to embrace all cities or counties, thereby making the enactment general in form.

*Field* v. *Silo,* 15 *Vroom* 355, and *Yost* v. *Burns,* 19 *Vroom* 356, are not in conflict with the view now taken.

In the former case the decision is put upon the express ground that the legislation created uniformity and prevented

diversity, and thereby promoted the object for which the provision against special legislation was devised.

In the latter case the only question was whether the act of 1884 applied to the District Courts of the city of Newark. It was properly held that it did not, because by its terms it embraced only the courts created by the act to which it is a supplement.

Under the general law of 1881 the ordinances certified are of no force until published in the manner thereby prescribed. So far, therefore, as the proceedings certified rest upon this ordinance, they are of no force.

But it is not necessary, nor proper, to set aside the ordinances if the power existed to pass them.

No time is prescribed within which the publication shall be made. The ordinances, so far as legally passed, will take effect when due publication shall be made.

The main questions in this case are the remaining two, which may be discussed together. They involve the consideration, in the first place, of the power and duty of the receiver of taxes under the provisions of the city charter.

. Section 49 of the city charter provides that the receiver of taxes shall have his office in the city hall, and shall sit at such times and places as the city council shall direct, and that it shall be his special duty to receive all taxes that may be paid.

Section 50 requires him to enter his receipts in books kept for the purpose, with the name of the person making payment, and twice a week to furnish a detailed statement of such sums to the city treasurer, and pay over to the treasurer the sums collected by him.

Section 66 provides that after taxes are returned for non-payment they shall bear interest at the rate of twelve per cent., and that it shall be the duty of the receiver of taxes to collect this interest in addition to the tax, which sums are to be paid over by him to the city treasurer.

By the sixty-eighth section, in case of non-payment, the tax warrant is issued to the receiver of taxes.

This legislation unquestionably makes the receiver of taxes

the sole officer for the collection of personal taxes. The seventy-fourth section as clearly makes the receiver of taxes the officer whose duty it is to receive taxes which are a lien on real estate. By the same section the duty is cast upon the receiver to keep a record showing the taxes upon city lots, paid and unpaid.

These references clearly show that the city charter has cast upon the receiver of taxes the duty to collect all city taxes. But he has no power to sell lands for the satisfaction of taxes which become a lien thereon.

The charter of Camden was passed in 1871. The forty-seventh section provides that the receiver of taxes shall possess the power and perform the duties of collectors of the several townships, so far as such powers and duties shall be consistent with the provisions of said charter.

By the act of April 11th, 1866 (*Rev.*, *p.* 1159, § 87), it was provided that the tax warrant for delinquent taxes should be issued to, and executed by, the collectors of the townships. It was not until the act of March 14th, 1879 (*Pamph. L.*, *p.* 340), went into effect that the town committee was authorized to issue the tax warrant to sell lands for taxes, directed to the collector, and to be executed by him. *Rev. Sup.*, *p.* 990, § 51. The power thus given by the charter of 1871 to the receiver of taxes in Camden was such power as the township collector then had, which did not extend to the sale of lands for taxes. The township collector now has no power to sell lands for taxes until the township committee issue to him the tax warrant for that purpose. There is no legislation which authorizes the issuing of such a warrant to the receiver of taxes in the city of Camden.

The sixty-fourth and seventieth sections of the city charter clearly lodge that power elsewhere.

Nor has the receiver of taxes any duty whatever with respect to assessments for improvements. The language in the sixty-fourth section in reference to " taxes and assessments which shall be made a lien upon real estate " applies only to annual taxes, as the words immediately following show, viz.:

" Whether the same may be state, county, city or school tax."
This can have no relation to street improvements.

Nor is the word—" taxes "—used in the fifty-third section
of the city charter to include assessments for street improve-
ments. By the fifty-second section it is expressly made to
signify only the annual taxes for the various purposes
specified.

Section 76 authorizes the paving and grading of streets,
and section 77 provides the mode in which the cost and
expenses of the same shall be assessed and collected. The
course of proceeding prescribed is that the owner of the land
may execute the work along his premises in compliance with
the ordinance, and if he fails to do so the city council shall
cause it to be done and pay for it out of any money in the
hands of the city treasurer. A particular statement of the
cost of the work is to be filed with the city clerk, and the cost
thereof is to remain a lien upon the said land until it is paid
and satisfied.

The same section gives the city council the option to sue for
the amount due the city in the name of the city treasurer, or
to cause the lands upon which it is a lien to be sold to pay
the same.

By the ninetieth section of the city charter sewer assess-
ments are to be collected in the same way.

This mode of proceeding is preserved by the ninth section
of the act of March 19th, 1872.

Who, then, under the seventy-seventh section of the city
charter, is the officer authorized to receive payment of these
assessments, voluntarily made, before legal proceedings are
taken to enforce payment? It cannot be the city council. To
which of the council would such payment be made, and how
would the account be kept, and by whom? Such an idea
cannot be seriously entertained.

The city solicitor has no authority to receive payment; his
duty with respect to this matter does not commence until legal
proceedings are instituted, and then the suit must be in the
name of the city treasurer, and whatever part the solicitor

takes in the transaction is as the attorney of that officer. The city treasurer is the suitor. He has paid the money out for the work in the first instance, and he is entitled to be reimbursed, and he is the city officer who must keep the account and respond to the city. Section 46 of the city charter clearly defines his duty in this particular.

The city solicitor, under the seventieth section of the charter, is the representative of the city council, whose duty it is to cause such sales to be made, and, when sale is made, the declaration of sale must be made by the city council, under the city seal, and the proceeds of sale paid to the city treasurer. Charter, §§ 64, 77.

My conclusion from this legislation is that the receiver of taxes must collect all taxes which are not made by the sale of lands; that he has no authority to sell lands for taxes, and no duty to perform with respect to assessments.

The city treasurer is the officer to whom payment of assessments must be made, and in whose name suit must be brought to compel payment, if necessary to do so.

The seventieth section of the charter provides " that on or before the 1st day of March in each year the city council shall direct and authorize the city solicitor to proceed and sell, according to law, all lands, tenements and real estate, to enforce payment of any taxes or assessments which may be a lien thereon, by virtue of this act."

This section applies both to taxes and assessments, and authorized the city council to pass the resolution of March 31st, 1887.

Whenever it is necessary to resort to suit to collect assessments, it is competent for the city council to empower the city solicitor to conduct such suits on behalf of the city treasurer. But in so far as the ordinances certified impose upon the city solicitor the duties which are required to be performed by the receiver of taxes, they are unauthorized, and in conflict with the city charter.

The effect of the Martin act (Pamph. L. 1886, p. 161),

which has been adopted by the city of Camden, remains to be considered.

By the title of this act it concerns the settlement and collection of arrearages of unpaid taxes, assessments and water rates, or water rents, in cities of this state. Each one of the words—"taxes," "assessments" and "water rents"—as used in this act, has a definite and well-understood meaning. They are not used as synonymous, but each word represents a distinct class of burdens. It is important to bear in mind that it had been so held in the highest court of this state, before the Martin act was passed. *State, Protestant Foster Home, pros.,* v. *Newark,* 7 *Vroom* 478. These words are used in the first three sections of this act to describe the different classes of arrearages.

The fourth section provides "that upon the confirmation of the said report a certified copy of the same shall be transmitted to the comptroller of the city, or other officer for collecting assessments, to be by him filed in his office, and thereupon the amount of said tax, assessment and lien, so fixed and certified in respect of each and every lot or parcel of land included therein, shall immediately become due and payable, and shall be collected by the said comptroller, or said other officer, without interest, if the same be paid within sixty days after filing of such certified copy of the report with him, and if not so paid, then with interest from the date of such filing at the rate of six per centum per annum, and, if not paid within six months from such filing, with interest at the rate of seven per cent."

After the expiration of six months the said comptroller, or other said officer, is empowered to sell the lands as therein directed.

The question to be solved is, Who, under this legislation, is authorized to collect the readjusted taxes, assessments and water rents in Camden?

The comptroller of the city of Camden is merely an auditor, without authority to collect either taxes or assessments,

and he therefore is not the officer referred to in the fourth section of the Martin act.

It is not the officer of the city of Camden whose duty it is to collect taxes that must collect these readjusted arrearages. Therefore, the receiver of taxes has no authority under this act.

The act distinctly says that the officer who collects assessments shall collect the readjusted taxes and assessments, and the same officer to whom they are voluntarily paid shall be the officer whose duty it shall be to enforce payment by sale of lands.

As has been shown, the officer whose duty it is, under the city charter, to collect assessments is the city treasurer.

Under the Martin act, therefore, it will be the duty of the city treasurer to collect the readjusted taxes, assessments and water rents, and to sell lands for the same when necessary.

This does not deprive the city council of the power, under the seventieth section of the city charter, to give the city treasurer the advantage of the city solicitor's aid in conducting such sales.

In the principal cities of this state the great bulk of arrearages consists of unpaid assessments. It is reasonable to presume that it was intended by this legislation, after readjustment, to impose the duty of collecting upon the officer whose province it was to collect assessments, and not upon the officer who receives taxes only.

The language of the enactment is express, that the officer designated is the one who collects assessments, and if this is not interpreted to mean the city treasurer, the city of Camden is without any officer to perform so important a duty.

Attention has been called to the fact that the thirteenth section of the supplement of 1872 to the city charter gives the city council power to make an agreement with a contractor who does the work of street improvements, that he shall collect, in his own name, from the land-owners, the cost of the work. This circumstance cannot affect the construction of the legislation in question. Such contractor is not an officer of the city,

and cannot be within the meaning of the fourth section of the Martin act.

The thirteenth section of the Martin act provides that taxes levied after the passage thereof, where the rate does not exceed three per centum, and assessments thereafter levied and assessed on lands, which shall remain unpaid for the space of three years from and after the time when due and payable, may, in the discretion and upon the direction of the board or body having charge or control of the finance of the city, be sold as in said section is directed.

This leaves it discretionary with the common council in such cases to pursue the mode of collecting and sale provided by the Camden city charter, or that prescribed by the thirteenth section of the Martin act.

If the latter course is adopted, then there must be a delay of three years, as therein provided.

If the former method is elected, then the provisions of the charter as hereinbefore construed, including the seventieth section, apply and must regulate the proceedings.

In my judgment no infirmity appears in the resolution certified. Costs will not be allowed in either case.