# William H. McCleary, Appellant, v. Allegheny County.

*Statutes—Repeal of statutes—Municipalities.*

Statutes of a general nature do not repeal by implication charters and special acts passed for the benefit of particular municipalities; but they do so, when this appears to have been.the purpose of the legislature. If both the general and the special acts can stand, they will be construed accordingly. If one must give way, it will depend upon the supposed intention of the lawmaker, to be collected from the entire course of legislation, whether the charter is superseded by the general statute, or whether the special charter provisions apply to the municipality, in·exclusion of the general enactments.

Where a local act provides that the compensation of a public officer shall be partly by salary,·and partly by fees, and a subsequent general act provides that the compensation shall be entirely by salary, the two acts cannot stand together, and the local act is repealed by the general act.

*Statutes—Repeal—Public officers—Sheriffs—Salary—Acts of April 6, 1871; March 6, 1872; March 31, 1876; June 13, 1883.*

The act of June 13, 1883, P. L. 113, supplementary to the act of March 31, 1876, P. L. 13, providing that, in all counties containing over five hundred thousand inhabitants, sheriffs shall be compensated by salaries alone, repeals the acts of April 6, 1871, P. L. 476, and March 6, 1872, P. L. 208, providing that the compensation of the sheriff of Allegheny county should be in part by salary and in part by fees. Bell v. Allegheny Co., 149 Pa..381, distinguished.

Argued March 9, 1894. Appeal, No. 65, Oct. T., 1894, by plaintiff, from judgment of C. P. No. 1, Allegheny Co., March Term, 1892, No. 21, on demurrer to statement. Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ. Reversed.

Assumpsit for salary of sheriff.

Plaintiff in his statement claimed to recover $8,750, being a balance of salary alleged to be due him under the acts of March 31, 1876, P. L. 13, and June 13, 1883, P. L. 112, fixing the salaries of sheriffs at $15,000 per annum in all counties con-. taining over five hundred thousand inhabitants. The statement averred that in the year 1890, and prior to the election of plaintiff, the population of Allegheny county was 551,959. Defendant filed a demurrer to the statement, alleging as ground

for demurrer that plaintiff's salary was determined by the act of April 6, 1871, P. L. 476.    The court sustained the demurrer, and entered judgment for defendant, in an opinion by STOWE, P. J.

*Error assigned* was above order.

*John F. Sanderson* and *D. T. Watson, Walter Lyon* and *Charles H. McKee*, with them, for appellants.—The act of 1876 repealed the acts of 1871 and 1872 : Com. v. Grier, 152 Pa. 176.

The courts will give effect to the legislative purpose to revise and consolidate, or to substitute : Johnston's Est., 33 Pa. 511 ; Best v. Baumgardner, 122 Pa. 17 ; Kilgore v. Magee, 85 Pa. 411.

It is submitted that the decision in Bell's case is a misapplication of an undoubted principle, and that upon general principles of construction the act of 1876 and its supplements ought to be given full effect without exception in the county of Allegheny : Endlich, Int. of Stat. § 264 ; art. 14, § 5, Const. 1874 ; McCarthy v. Com., 110 Pa. 243 ; Pierie v. Phila., 139 Pa. 573 ; Com. v. McCandless, 21 W. N. 162.

The act of March 31, 1876, is constitutional and the classification of salaries therein and in the supplements thereto is valid : Perot's Ap., 86 Pa. 335 ; Taggart v. Com., 102 Pa. 354 ; Monroe v. Luzerne Co., 103 Pa. 278 ; Glennon v. Luzerne Co., 109 Pa. 564 ; McCarthy v. Com., 110 Pa. 243 ; Phila. v. Martin, 155 Pa. 583 ; Pierie v. Phila., 139 Pa. 573 ; Rymer v. Luzerne Co., 142 Pa. 108 ; Com. v. Grier, 152 Pa. 176.

The classification of salaries depends upon the census.    Salaries are payable pursuant to the statutory definition, and according to population, as ascertained from time to time.    The census and the statutory definition, without more, change the application of the salary schedule in the various counties as they rise above, or fall below, the definition of a pre-existing application : Wheeler v. Phila., 77 Pa. 338 ; Kilgore v. Magee, 85 Pa. 407 ; Monroe v. Luzerne Co., 103 Pa. 278 ; Glennon v. Luzerne Co., 109 Pa. 564 ; Com. v. Grier, 152 Pa. 176.

The act of June 13, 1883, P. L. 113, is valid, although its title is subject to criticism.    The first section is covered by the title and that is enough : Com. v. Green, 58 Pa. 226 ; Dorsey's Ap., 72 Pa. 192 ; Allegheny County Home Case, 77 Pa. 77 ;

Allegheny County Home v. Moorehead, 80 Pa. 118 ; Hatfield v. Com., 120 Pa. 395. As it was passed after appellant took office : Const., art. 3, § 13 ; Reid v. Smoulter, 128 Pa. 324.

*N. S. Williams,* for appellee.—A general statute without negative words cannot repeal a previous statute which is particular, even though the provision of the one be different from the other : Brown v. Com'rs, 21 Pa. 43 ; 1 Sharswood's Bl. 90 ; Bounty Accounts, 70 Pa. 96 ; Rounds v. Waynart Boro. 81 Pa. 395 ; Seifried v. Com., 101 Pa. 202; Dillon Mun. Corp. § 54 ; Com. v. McCallin, 10 W. N. 520 ; Kilgore v. Com., 94 Pa. 495; Malloy v. Reinhard, 115 Pa. 29 ; Morrison v. Fayette Co., 127 Pa. 110 ; Rymer v. Luzerne Co., 142 Pa. 108 ; Safe Deposit & Trust Co. v. Fricke, 122 Pa. 231.

Com. v. Grier, 152 Pa. 179, was decided on a misapprehension of the facts.

Com. v. Macferron, 152 Pa. 244, is not in point. The question was whether the previously existing tax laws of the city of Allegheny, while a city of the third class, not having been repealed in express terms, had survived the transition of the city into another class (a city of the second class), and were in full force.

The act of 1883 being plainly a revision of § 12, of the act of 1876, yet such purpose is not disclosed in the title ; there is reference to the title only, there is no re-enactment or republication of the schedule of salaries of the former act, and there is no notice in the title of an intent to repeal § 12 of the act of 1876, but in § 2 it is attempted in order to work out the revision necessary to the enforcement of section 1. The two sections are inseparable, and if one is unconstitutional, they both fail : Frost v. Cherry, 112 Pa. 417 ; Hatfield v. Com., 120 Pa. 395.

OPINION BY MR. JUSTICE DEAN, Oct. 1, 1894 :

The plaintiff is sheriff of Allegheny county. He was elected at the general election in 1890, and entered upon the duties of his office the first Monday of January, 1891. Acting on the assumption that his office was a salaried one under the act of June 13, 1883, a supplement to the general act of 1876, and that he was not entitled to any of the fees taxed by the fee bill

for the sheriff, he kept an itemized monthly account of all fees earned and received by him, and promptly paid those received each month into the county treasury, and on the second Monday of each month demanded from defendant his monthly salary for the previous month. For the first seven months he earned and paid into the county treasury, fees, $20,763.33. After deducting pay of sheriff's deputies and clerks, there still remained a net balance to the county's favor, for the seven months, of $8,550.02.

The act before noticed purports to be an act fixing salaries of all county officers in counties containing over 500,000 inhabitants, and directs that the sheriffs of such counties shall be paid an annual salary of $15,000. Under the decennial census of 1890, Allegheny county had a population of 551,959. The sheriff claimed that, under this act, the county should pay to him one twelfth of $15,000 each month. While admitting the office was a salaried one, the county denied that the amount of the salary was fixed for Allegheny county by the act of 1883, but alleged it was determined by the special act of March 6, 1872, passed for Allegheny county before the adoption of the new constitution. By this act the salary of the sheriff was $6,000 and mileage.

While the court below evidently was of opinion that the sheriff's salary was $15,000 as fixed by the later act, yet, believing that the law, as decided by this court in Bell v. The County of Allegheny, 149 Pa. 381, ruled the case against plaintiff, entered judgment on demurrer for defendant. As a consequence, we have this appeal by plaintiff.

The record does not show what would have been the annual compensation of the sheriff at a salary of $6,000 and mileage; it may be safely assumed the whole would not have amounted to $15,000, otherwise he would have had no motive in making claim under the act of 1883. The stand taken by the county, in effect, avers the source of his compensation is a mixture of the two systems, salary and fees.

One of the grievances of the people, before the adoption of the constitution of 1874, was the large compensation of county officers in counties having a large population; this (see debates of constitutional convention, pages 304 and 332, vol. 8), was especially prominent in Philadelphia and Allegheny coun-

ties, where it was alleged the receipts from fees were out of all proportion to the services rendered or responsibilities entailed ; so, it was declared in section 5 of article XIV that, " In counties containing over one hundred and fifty thousand inhabitants, all county officers shall be paid by salary, and the salary of any such officer and his clerks, heretofore paid by fees, shall not exceed the aggregate amount of fees earned during his term and collected by or for him." This section was a mandate to the legislature to provide by law a salary for all county officers in counties whose population made them subject to the constitutional provision : Perot's Appeal, 86 Pa. 335. Therefore the legislature passed the act of March 31, 1876, entitled " An act to carry into effect section 5, article XIV of the constitution, relative to the salaries of county officers, and the payment of fees received by them, into the state or county treasury, in counties containing over one hundred and fifty thousand inhabitants."

The first section of the act enacts : " That, in all counties in this commonwealth containing over one hundred and fifty thousand inhabitants, all fees limited and appointed by law to be received by each and every county officer therein elected, by the qualified voters of their respective counties, or appointed according to law, or which they shall legally be authorized, required or entitled to charge or receive, shall belong to the county in and for which they are severally elected or appointed . . . . and none of said officers shall receive for his own use or for any use or purpose whatever, except for the use of the proper county . . . . any fees for any official service whatsoever." The 2d, 3d and 4th sections of the act then specify, in elaborate detail, how the accounts of the fees shall be kept and verified. The 5th section declares that : " All county officers within the counties to which this act applies . . . . and their several deputies and clerks, shall be paid for their services by fixed and specific salaries, which shall be a charge upon the treasury of the county to which each shall respectively belong, to the extent of the fees collected and paid in by each officer respectively, or earned, where fees are chargeable upon the county treasury." The 6th, 7th, 8th, 9th, 10th and 11th sections relate to the adjustment of the salaries of the officers and clerks, where the fees do not reach the amount of salaries, and

provide that the county commissioners and controllers shall constitute a board for supervision and adjustment, and further provide for an appeal from their decision to the court of common pleas. The 12th section fixes the annual salary of the sheriff in counties containing over 300,000 inhabitants at $15,000. In those under 300,000 and over 250,000, at $6,500. In those under 250,000 and over 150,000, the same amount was fixed for the sheriff, but the salary was put at a lower figure than in the second classification, for some other of the county officers. Section 15 enacted that the salary so fixed should be in lieu of all fees and mileage now received. Sections 16, 17 and 18 provide that certain officers shall be paid quarterly, who shall be deemed county officers, and also when the act shall take effect.

The plain command of the constitution in section 5, article XIV, to the legislature, was to fix by law salaries for county officers in counties containing over 150,000 inhabitants. That in obedience to this command the act of 1876 was passed, we think no lawyer now doubts, or ever has doubted.

After the census of 1880, on 11th of May, 1881, there was a supplement to the act of 1876 passed, which modifies the classification, so as to make a class between 300,000 population and 500,000. Then came the act of June 13, 1883, entitled " An act to fix the salaries to be paid county officers in counties containing over five hundred thousand inhabitants, being a supplement to an act approved 31st March, 1876, entitled ' An act to carry into effect section 5, article XIV, of the constitution, relative to salaries of county officers . . . . in counties containing over one hundred and fifty thousand inhabitants.' " The act contains but two sections. Section 1: " Be it enacted: that in counties containing over five hundred thousand inhabitants, the annual salaries of county officers shall be as follows, namely : Of the sheriff, fifteen thousand dollars," and further, along with the sheriff's, a schedule of the salaries of all other county officers. Then section 2 particularizes all the salaries to be paid under the act of 1876, so far as relates to counties containing over 300,000 inhabitants, and expressly repeals so much of said act as embraces that class ; and further directs that the supplement shall only affect officers elected after its passage. By the census of 1890, Allegheny county had a population of

551,959, so that, as far as population is concerned, it came within the terms of this supplementary act, and within the terms of the unrepealed provisions of the original act of 1876.

But it is argued, the act of 1876 does not apply to Allegheny county, because all the county officers of that county were salaried under the provisions of the act of 6th March, 1872, relating to Allegheny county, and the former being a general affirmative statute, does not, without positive repugnancy, repeal the particular or local statute. That this is a settled rule of construction cannot be questioned; and, although it is manifest the constitution of 1874 sought to enforce uniformity of compensation of county officers in counties of the same class, the end must be attained by laws which leave no doubt of their intent to repeal local laws not in conformity with the general law. The rule of construction on this subject has been stated in Johnston's Estate, 33 Pa. 511, where it is held, following Harcourt v. Fox, 1 Shower's R. 520, an affirmative statute introductive of a new law on the same subject does imply a negative of the former law, if they are repugnant. Or, as stated in Dillon on Municipal Corporations, section 54, for which he cites cases in our own and many other states: " It is a principle of very extensive operation, that statutes of a general nature do not repeal by implication charters and special acts passed for the benefit of particular municipalities; but they do so, when this appears to have been the purpose of the legislature. If both the general and the special acts can stand, they will be construed accordingly. If one must give way, it will depend upon the supposed intention of the lawmaker, to be collected from the entire course of legislation, whether the charter is superseded by the general statute, or whether the special charter provisions apply to the municipality, in exclusion of the general enactments."

We do not understand that the law, as thus stated, is dissented from by either of the parties to the present suit; the contention turns on the application of it to the issue here ; the plaintiff contending that the manifest intention of the legislature, from the course and language of the legislation on the compensation of the sheriff, was to repeal the provisions of the act of 1872, at least so far as related to this officer; the defendant denying that any such intention appears, and averring that all the acts can stand without defeating the legislative intent.

If, under the act of 1872, the office of sheriff of Allegheny county was a purely salaried office, there would be no such inconsistency between it and the act of 1876, as would work a repeal of the former; for, the mere fact that under the last, a higher compensation was awarded sheriffs, than under the first, would only indicate a legislative intent that other sheriffs should be paid more. But in ascertaining the legislative mind, we must take into consideration, first, the moving cause of the general law. The members of the general assembly were bound to enact the necessary laws to carry into effect the constitution of 1874. That said in unmistakable terms, " You must regulate by law the compensation of all county officers, and, in all counties having over 150,000 population, they shall be paid by salaries, and they must pay all fees into the state or county treasury." Here was a positive command that in this class of counties these officers must be paid by salaries and not by fees; it was not to compensate them by part salary and part fees, but wholly by salary. As shown by the debates, the very object of the provision was to relieve the public in large counties from obnoxious exactions and exorbitant and vexatious charges, prompted by the self interest of the officer, when the fees went into his own pocket.

And in the same spirit, as shown by the first words of the first section of the act of 1876, the legislature obeyed this mandate : " All fees . . . . received by each and every county officer . . . . shall belong to the county." It then fixes the salaries which they were to receive, and this was all they were to receive.

Now take the act of 1871 to which that of 1872 is a supplement. The first section is almost word for word the first section of the act of 1876, but it is followed by this significant qualification : " Provided that the sheriff and coroner shall be authorized to receive and retain for their own use the mileage allowed by law, in all cases where mileage is chargeable."

Every lawyer familiar with the taxation of sheriff's costs under a fee bill, knows what a large proportion of his charges, especially in a county of the area of Allegheny, was made up of mileage, and the abuses which inevitably grew up under this practice. The fee for serving a writ could be verified by an inspection of the fee bill; the number of miles the sheriff or

his deputies traveled to serve it, was, in many cases, incapable of verification, and conscious wrong was often submitted to. Did the legislature intend, by the act of 1876, that in the second most populous county in the commonwealth, the most prominent county officer should retain a large part of his fees and a large part of his power of exaction, in the face of the constitutional command? Or did they intend to embrace him, and all sheriffs receiving fees in counties of like population, in the language, "In all counties in this commonwealth containing over one hundred and fifty thousand inhabitants, all fees . . . received by each and every county officer . . . . shall belong to the county?"

In this essential particular, the two acts are fatally repugnant; by the first, his compensation is part salary and part fees; by the last, wholly salary, and all fees belong to the county. They cannot stand together. The general act being in complete harmony with the constitution, and clearly passed to carry it into effect, the local act, as respects the sheriff, must give way to the general act.

This is substantially the same construction, as was put upon this legislation by President Judge EWING in Com. v. Grier, 152 Pa. 176, in a case involving the compensation of the district attorney for the county of Allegheny. In that case, by the act of 1871 and supplement of March 6, 1872, this officer was to receive an annual salary of $4,000, and in addition fifty per cent of the fees and percentages allowed by law on all forfeited recognizances. It was held, in an opinion approved by this court, that the district-attorney, under the act of 1876, was entitled to a salary of $5,000, and all fees were payable into the county treasury; on the ground that the acts of 1871 and 1872 were irreconcilably inconsistent with the act of 1876, and were clearly intended to be repealed by the last mentioned act.

It is argued by appellee that this view of the law is not in accord with that of Bell v. The County of Allegheny, 149 Pa. 381. That case involved the compensation of the county treasurer, which was fixed by the local acts of May 1, 1861, and March 11, 1870. As presented in the court below, and on appeal in this court, the sole question was, whether the salary of this officer was fixed by the local act of 1870, or by the general law. Under either act, it was assumed, by counsel and by the-

court below, that he would be paid a salary. Not whether he should be paid fees and salary under a local act or wholly salary under a general act.

The local acts referred to, provided only a smaller salary than the general act; there was no repugnancy between them which negatived either. Here there is irreconcilable hostility between the principles on which the statutes are founded; one is passed to strike down the fee system with its abuses; the other clings to and nourishes it. In the Bell case, as argued, both statutes accomplished the same end, that sought for by the fundamental law, compensation wholly by salary; in the case before us, if affirmed, the worst feature in the fee system, sheriff's mileage, will be retained.

In the opinion of this court, delivered by Justice HEYDRICK in Bell v. Allegheny County, supra, it is assumed throughout, that the question was whether a local salary act was impliedly repealed by a general salary act passed since the adoption of the constitution. The paper-books give no intimation that the compensation of that officer was partly fees. In Com. v. Grier, supra, President Judge EWING distinguishes that case from Bell v. Allegheny County, because, in Bell's case, the salary of the county treasurer had been definitely fixed without any fees, at the date of the adoption of the new constitution. It is suggested now, by appellee's counsel, that the county treasurer, under another local act, that of 1872, was entitled to receive one dollar fee for each printed bond in license cases. Whether the preparation and printing of this bond was intended to be an item of expense to be thus charged for, or a fee for services, is not clear. But, however this may be, this court, and all others, hear and decide cases on the issues presented of record; the judgments in them are authority for what is passed on and decided. They are not precedents for issues not raised until two years after final judgment. Bell v. Allegheny County is the law of that case and all others like unto it. It is not authority in the cases of other county officers, where the contention is on radically different facts. It is not clear to us from the computation of fees earned and received that the whole of plaintiff's claim is allowable, therefore the judgment of the court below sustaining the demurrer is reversed at costs of appellee, and the record is remitted that the cause may be proceeded in to final judgment.