STATE OF MINNESOTA ex rel. E. E. PUTNAM and Others v. JAMES J. EGAN, District Judge.[1]

May 8, 1896.

Nos. 9630—(10).

### Local Improvements—Void Assessment—Reassessment—Estoppel.

The charter of the city of St. Paul provides that whenever an assessment for a local improvement, upon the real estate benefited, is, for any cause, set aside by the court, the property may be reassessed. Such an assessment was made on the property of the appellants, and, as to a part thereof, the assessment was set aside by the court, on the application of the owners, and as to the balance the city refunded to the owners the amount paid by them on such assessment. The refund was made and accepted upon the mutual understanding of both parties that the assessment was void. *Held*, in proceedings for a reassessment of such property, that the fact that the original assessment was not formally set aside by the court as to the whole property was not a defense as to such owners.

### Constitution—Special Legislation—Repeal by Implication.

The amendment to the constitution prohibiting special legislation, and providing that general laws shall be uniform in their operation, does not impart to general laws, touching any of the subjects as to which special legislation is prohibited, a repealing effect they would not have without it, or change existing rules of statutory construction as to repeals by implication, or render such general laws invalid unless they repeal all prior special laws relating to the same subject. Whether such special laws shall be repealed, and, if so, when and how, are matters left by the amendment to the discretion of the legislature.

[1] Reported in 67 N. W. 77.

City of St. Paul—Reassessment—Laws 1893, c. 206.

*Held,* accordingly, that the special provisions of the charter of the city of St. Paul providing the method of making and collecting reassessments were not repealed by Laws 1893, c. 206.

Certiorari to review a judgment of the district court for Ramsey county in favor of the city of St. Paul, entered in pursuance of the findings and order of Egan, J. Affirmed.

*Samuel A. Anderson,* for relators.

*E. J. Darragh* and *Hermon W. Phillips,* for respondent.

START, C. J. This matter comes here by certiorari to review the judgment of the district court of Ramsey county affirming the reassessment of the real estate of the objectors benefited for the damages awarded on the condemnation by the city of St. Paul of land for opening of Linwood Place, a public street of the city.

In 1892 the city condemned for this purpose lot 13, Kenwood Terrace, and took possession thereof. The award of damages for such taking was $5,000, which sum was assessed on the property benefited. A portion of the owners of the property so assessed paid the amount, but others did not; and the city treasurer applied to the district court for judgment against the delinquent property. Judgment was entered by default against portions of the property, and objections were filed as to the balance. The objections were sustained, and the assessment of the property as to which objections were filed was set aside by the court, on the ground that the award of damages for the taking of the lot was invalid. The city, acting upon the decision of the court, and assuming that the entire assessment was void, refunded to the several owners, who had not so contested and procured the setting aside of the assessment as to their property, the sums which they had paid, or for which their property was sold on the default judgments. The trial court found, and the finding is sustained by the evidence, that the money so refunded was paid by the city, and accepted by the property owners, on the theory, understood by both parties, that the assessment was void.

Thereupon the city, by its board of public works, commenced the present reassessment proceedings. The notice therefor stated that the board would meet to make a re-award of damages for the lot

taken, and for a reassessment of benefits. The board awarded $5,000 as damages for the taking of the lot, the precise sum previously awarded for the same purpose, and reassessed the benefits on that basis. After this reassessment, this court, in the case of James v. St. Paul City, 58 Minn. 459, 60 N. W. 21, held that the original award of damages was valid. As to all of the property of the objectors involved in this proceeding, the owners thereof, prior to such reassessment, either procured the original assessment to be set aside by the court as void, or received from the city the amount of the assessment, upon the understanding already stated.

1. The objectors claim that the attempt of the board to recondemn the lot was a nullity, and that the notice of reassessment of benefits was void, because it purported to be a notice for recondemnation and reaward of damages, as well as a notice of reassessment of benefits. The objections are not well taken, for the reaward of the damages, the first award being valid, was a harmless irregularity at most, for it resulted in no increase of the reassessment on the property of the objectors. The statute expressly provides that no error or irregularity shall prevent a reassessment to the extent of benefits conferred. Sp. Laws 1887, c. 7, subc. 7, tit. 1, § 61.

It is further claimed that the reassessment is void because the original assessment, as to a part of the property of the objectors, has never been set aside by the court, and, until so set aside, it could not be ignored. The short answer to this claim is the fact, already stated, that, as to all of the property of the objectors, the original assessment was either set aside by the court at the instance of the owners, or the amount of the assessment was refunded to them by the city, and accepted by them, upon the concession of both parties that the assessment was void. Hence they are equitably estopped from now claiming, for the purpose of defeating the reassessment, that the original was not formally set aside by the court.

2. The last claim of the objectors is that Laws 1893, c. 206,[2] repealed all of the special statutory provisions contained in the

[2] G. S. 1894, §§ 1163–1171.

charter of the city of St. Paul, under which the reassessments in this case were made.

The act of 1893 is a general law, and section 2 thereof[3] provides that, whenever any assessment for local improvements undertaken by any municipal corporation of this state shall be set aside, the cost of such improvement may be reassessed in the manner provided in the act. Then follow provisions relating to the procedure for making and collecting such reassessments. The act contains no repealing clause, and it does not purport to repeal any existing laws. At the time the act was passed, there were municipal corporations in the state having no power to make reassessments for local improvements, while others had such power by virtue of the provisions contained in their charters, which were special laws, and had no application except to such municipal corporations. Such was the case with the city of St. Paul.

The rule is well settled that a general statute, without negative words or positive repugnancy, will not repeal, by implication, the provisions of an existing prior special one. It is only when it appears that such is the intention of the legislature that statutes of a general nature repeal, by implication, charters and special acts passed for the benefit of particular municipalities. The intention of the legislature that a general law should have the effect to repeal by implication a prior act is less readily to be implied where such act is a part of a municipal charter, presumably enacted with regard to the wants of a particular locality, than if the act were general.

It is urged on behalf of the objectors that the amendment to the constitution forbidding special legislation[4] renders this rule of statutory construction as to repeals by implication inapplicable to this case. The argument is that if chapter 206 does not apply, either expressly or by necessary implication, to cities having special chapters covering the subject of reassessments for local improvements, it would not be general and of uniform operation throughout the state; therefore an intention on the part of the legislature to except such cities will not be imputed, since it would make the law a nullity. This presents an important question.

<hr />

3 Id. § 1164.                                 4 Const. art. 4, § 33.

The proposition urged seems to find support in what is said in the cases of Bowyer v. Camden, 50 N. J. Law, 87, 11 Atl. 137; Hoetzel v. East Orange, 50 N. J. Law, 354, 12 Atl. 911. The cases cited, however, differ from the one at bar, in that the laws under consideration in those cases expressly repealed all inconsistent legislation. If a general law (containing no repealing clause) which in any manner relates to matters which are already provided for by special charters of the municipalities of the state, which antedate the constitutional amendment, must be held to repeal pro tanto, by implication, such special charters, the result will be great confusion and serious injury to public and private interests,—a result certainly not intended by the framers of the amendment. Such a result must be avoided if it can be done by any practical and reasonable construction.

The amendment of 1881 added two new sections (33 and 34) to article 4 of the constitution. Section 33 prohibited the legislature from enacting any special law as to certain specified subjects, and section 34 was in these words: "The legislature shall provide general laws for the transaction of any business that may be prohibited by section one of this amendment, and all such laws shall be uniform in their operation throughout the state." By the amendment proposed in 1891, and adopted in 1892, section 33 (the section 1 referred to in section 34) was materially changed; and, while there was no direct amendment of section 34, its subject-matter is included in a modified form in the amendment to section 33. This section, as it now stands, declares that no special law shall be enacted where a general law can be made applicable, and prohibits special legislation as to an increased number of subjects, and concludes with a proviso in these words: "That the inhibitions of local or special laws in this section shall not be construed to prevent the passage of general laws on any of the subjects enumerated. The legislature may repeal any existing special or local law, but shall not amend, extend, or modify any of the same."

Whether or not the first sentence of this proviso was intended to take the place of the mandatory provision of section 34 as to the duty of the legislature to proceed and enact general laws as to all of the prohibited subjects, or to what extent section 34

was superseded by section 33 as amended in 1892, are questions we need not stop to answer. But the last provision of the proviso is significant, for it deals with the subject of the amendment and repeal of then-existing special laws, which was wholly omitted in sections 33 and 34 as they were originally adopted. The legislature that proposed this proviso, and the people who adopted it, as a part of the organic law of the state, must be presumed to have had some purpose in ordaining it. They cannot be accused of doing a useless thing in reference to so important a matter as the amendment of the constitution. If the necessary legal effect of enacting general laws covering all of the prohibited subjects would be, ipso facto, to repeal all existing special laws relating in any manner to such matters, the express grant or power to repeal such laws would be wholly unnecessary.

At the time of the adoption of these amendments, there were a large number of cities and villages in the state organized under separate special charters, suited to the special and local needs of each municipality. Without repealing such charters, it was not possible to legislate so that all municipalities should have a uniform government. But if all special laws and charters had been repealed by the amendments, or the amendments had been so worded that legislation would not be general unless that result was attained, the consequences would have been most serious to the cities and towns of the state. Accordingly, as said in a case similar in some respects to the one at bar (State v. Inhabitants of Bloomfield Tp. [N. J. Ch.] 33 Atl. 855), "the framers of the constitution did not intend to disturb the past. They exacted uniform and general legislation for the future." So, too, the legislature that proposed, and the people that adopted, the amendments here in question, recognized the then situation, and understood the consequences of at once repealing all special laws. While ultimate uniformity in municipal government was the end sought by the amendments, the past could not be swept away abruptly. Hence, by the amendment of 1892, the time and manner of repealing such special laws were left to the discretion of the legislature.

The provision in section 34 to the effect that all general laws must be uniform in their operation is modified by the amendment

to section 33, relating to the amendment and repeal of existing special laws; and the two must be read together, and construed in the light of the exact situation of the cities and towns of the state at the time of their adoption. So considering them, it is clear that these amendments do not impart to general laws, touching any of the subjects as to which special legislation is prohibited, a repealing effect they would not have without them, or change the existing rules of statutory construction as to repeals by implication, or render such general laws invalid, unless they repeal all prior special laws relating to the same subject. Whether such special laws shall be repealed, and, if so, when and how, are matters left by the amendments to the legislature.

The constitution of the state of Pennsylvania, as to special legislation, is similar to ours, except that it contains no express declaration that all general laws shall be uniform in their application throughout the state. In the case of Evans v. Phillipi, 117 Pa. St. 226, 11 Atl. 630, it was held that the constitution prohibiting special legislation changed no rules relative to repeal by legislation of local laws existing when it was adopted; that it was not its intent and meaning that all future general legislation should be conditioned on the repeal of such local laws; and, further, that a statute general in form is not to be regarded as special simply because of the intervention of some unrepealed local statute, which prevents it from having general effect. See further, on this subject, on the repeal of a local law by a general law relating to the same subject, the cases of Bell v. Allegheny Co., 149 Pa. St. 381, 24 Atl. 209, and McCleary v. Allegheny Co., 163 Pa. St. 578, 30 Atl. 120.

Our conclusion is that the question of the repeal of the charter of the city of St. Paul relating to reassessments, by Laws 1893, c 206, is to be determined by the rules of statutory construction as to repeals by implication. Now, if we read the provisions of the general law here in question in connection with the provisions of the charter of the city of St. Paul relating to local improvements, the assessment of the cost of the same upon the property benefited, and the reassessment for the same, where the original assessment is set aside, it is apparent that the legislature did not

intend by the general law (Laws 1893, c. 206) to repeal such charter provisions or affect their local operation.

It is unnecessary to here set out in contrast the respective provisions of the two laws in full. It is sufficient to say that, under the charter of St. Paul, the method of making the reassessment and collecting it is substantially the same as the making and collecting of the original assessment, except the former may be collected with less delay. We must assume, in the absence of any express declaration to the contrary, that it was not the intention of the legislature to repeal the provisions of the charter as to the method of making and collecting reassessments, while it left such method as to the original assessment to be governed by the charter. It is manifest that the only purpose of this act of 1893 was to provide the necessary machinery whereby municipalities which were without the power under existing laws so to do might reassess for local improvements where the original had been set aside, and that it was not its purpose to repeal the special provisions of the charter of the city of St. Paul relating to the subject of reassessments for local improvements.

Our conclusion is that the special provisions of the charter under which the reassessment here in question was made were not repealed by the act of 1893. Whether the city of St. Paul might have made the reassessments under the general law is a question which is not before us, and we are not to be understood as expressing any opinion with reference to it.

Our conclusion in this case is in entire harmony with the case of State v. Sullivan, 62 Minn. 283, 64 N. W. 813, relied on by the objectors. In that case the general law under consideration contained a repealing clause. It also expressed on its face a purpose to make the pay of jurors two dollars for each day's service in every district court of the state. Such purpose could only be made effectual by the repeal of the special law applicable to Ramsey county, which fixed a different rate for jurors in that county. Hence the general law indicated an intention to repeal the prior special law, and brought the case squarely within the rule of statutory construction adopted in this case.

Judgment affirmed.