## Charles P. Jadwin, Appellant, *v.* Robert E. Hurley.

*Real estate broker—License—Acts of 1841 and 1849.*

A receipt or license from the city treasurer of Scranton is not, in law, such a license as authorizes a real estate broker to act as such in said city so as to relieve him from the penalties of the Act of May 27, 1841, P. L. 396, and the Act of April 10, 1849, P. L. 570, and to enable him to recover commissions as such.

*Mercantile tax—Statutes—Repeal.*

The Act of April 20, 1887, P. L. 60, repeals the 7th section of the Act of March 30, 1867, P. L. 630, authorizing the appointment of a mercantile appraiser by the councils of the city of Scranton and directing the payment of taxes as fixed by him to the city treasurer; hence, a receipt or license issued by said treasurer to a real estate broker does not constitute him a licensed broker under the law.

*Statutes—Construction—Purpose of uniformity—Repeal of special statute by general.*

Where legislation discloses an evident purpose to bring about uniformity in the affairs of cities, counties, boroughs and townships throughout the state, the courts will regard that purpose as controlling their interpretation of statutes in the consideration of whether a special statute is repealed by a general one and will hold that the former must give way if necessary to produce uniformity among all the members of the class, if it is found that the special statute conflicts with the system prevailing on the same subject.

Argued Jan. 17, 1899. Appeal, No. 33, Jan. T., 1899, by plaintiff, from judgment of C. P. Lackawanna Co., May T., 1895, No. 807, in favor of defendant non obstante veredicto. Before RICE, P. J., BEAVER, ORLADY, SMITH, W. D. PORTER and BEEBER, JJ. Affirmed. Opinion by BEEBER, J.

Assumpsit. Before LOVE, P. J., of the 49th judicial district, specially presiding.

It appears from the record that this was an action brought by plaintiff to recover commissions alleged to be due him as a real estate broker for the sale of certain real estate for defendant. It appears from the evidence that plaintiff offered the following paper which was admitted in evidence against the objections of defendant :

The court reserved the following question of law, " whether the receipt or license from the city treasurer of Scranton dated October 4, 1894, is, in law, such a receipt as authorizes the plaintiff to act as a real estate broker in this city and relieved him from the penalties of the act of 1841 and enables him to recover commission."

Verdict for plaintiff for $289.82, upon which the court subsequently entered judgment in favor of defendant non obstante veredicto.     Plaintiff appealed.

*Error assigned* was entering judgment for the defendant on the point reserved non obstante veredicto.

*C. Comegys,* with him *Roswell H. Patterson* and *William A. Wilcox,* for appellant.—It will be noticed that the act of March 30, 1867, is local and special legislation.   That being admitted, how then can it be for a moment successfully maintained that it was repealed by a general statute, without negative words, although their provisions may be in direct conflict? Rymer v. Luzerne Co., 142 Pa. 108 ; Morrison v. Fayette Co., 127 Pa. 110.

It has been held that where a statute merely re-enacts the provision of an earlier one, it is to be read as part of the earlier statute, and not of the re-enacting one, if it is in conflict with another passed after the first but before the last act: Endlich's Inter Stat. sec. 194.

We, therefore, respectfully maintain that the 3d section of the act of April 20, 1887, repealed no portion of the prior local act of 1867, that the right and power is still in the select council of the city of Scranton to appoint a mercantile appraiser for its territory, and that the city treasurer should collect these taxes.

*W. H. Jessup,* of *Jessup & Jessup,* and *T. F. Wells,* for appellee.—The act of 1887 operates as a repeal by implication of the act of 1867, and thereafter no mercantile appraisers could be appointed by the select council of the city of Scranton under the act of 1867: Com. v. Schneipp, 166 Pa. 401; Gilchrist v. Strong, 167 Pa. 628; Fenner v. Luzerne Co., 167 Pa. 632; Com. v. Wunch, 167 Pa. 186; Com. v. Lloyd, 2 Pa. Superior Ct. 614; Nusser v. Com., 25 Pa. 126; Com. v. Mann, 168 Pa. 290.

That this was the intention of the city officials and consensus of both the city and county officials is evidenced by the fact as is admitted in the evidence that in the years 1893, 1894 and 1895, no mercantile appraisement was made by any appraiser in the city of Scranton, appointed by the select council.

A party who is in default to the commonwealth for his license tax cannot recover any commissions for a sale made in his business as a real estate broker: Johnson v. Hulings, 103 Pa. 498; Holt v. Green, 73 Pa. 198; Costello v. Goldbeck, 9 Phila. 159.

OPINION BY BEEBER, J., March 23, 1899:

This suit was brought by plaintiff against the defendant to recover commissions earned as a real estate broker in the sale of defendant's real estate. The jury found a verdict for the plaintiff for the full amount of his claim subject to the point reserved: "Whether the receipt or license from the city treasurer of Scranton, dated October 4, 1894, is, in law, such a license as authorized the plaintiff to act as a real estate broker in said city and relieved him from the penalties of the acts of 1841 and 1849, and enables him to recover commissions as such." It is conceded that if the plaintiff had no license as a real estate broker for the year in which the commission was earned he cannot recover: Johnson v. Hulings, 103 Pa. 498. The receipt which the plaintiff was allowed to offer in evidence under objection was as follows: "City of Scranton, ss: Scranton, Pa., October 1, 1894. Received of C. P. Jadwin for the use of the Commonwealth of Pennsylvania Ten Dollars, which entitles him a real estate agent dealer of the thirteenth class within the City of Scranton for one year from the first day of May, A. D. 1894. (Signed) R. G. Brooks, City Treasurer." This receipt was offered in evidence by the plaintiff as his license to act as a real

estate broker in the city of Scranton.   The question to be decided is whether this receipt is a license to the plaintiff to act as a real estate broker.

The decision of this question involves an examination of the different acts of assembly regulating the appointment of mercantile appraisers and the issuing of licenses to real estate brokers.   The initial act on this subject is the Act of May 27, 1841, P. L. 396, which applied only to stock brokers, exchange brokers and bill brokers.   By its terms they were to pay annually into the treasury of the proper county for the use of the commonwealth the sums mentioned for the different kinds of brokers therein described, for which they were to receive a new commission authorizing them to conduct their business as stock, exchange or bill brokers.   Section 5 of this act imposed a penalty of $500 for each and every offense upon any such brokers who should exercise the business without having such a commission.   By the 5th section of the act of April 16, 1845, P. L. 532, it was enacted that for the purpose of securing the tax authorized to be assessed on wholesale dealers and retailers of merchandise, the courts of common pleas of the counties of Allegheny and Philadelphia, were authorized and empowered to appoint a person of suitable qualification in each county who should be styled the "appraiser of mercantile taxes, whose duty it shall be to ascertain and assess the dealers as aforesaid, in accordance with the provisions of the several acts of assembly regulating the tax upon vendors of merchandise, and the said appraiser shall take an oath or affirmation to discharge his duties faithfully and impartially."   Section 6 of this act provides that the appraisers shall prepare a list of all dealers in the county, arranging them in their several classes, and shall furnish to each a written or printed notice of their several classifications, "giving notice to each at the same time of the place and time at which appeals may be made from said classifications: . . . ."   Section 7 provides that if any person is dissatisfied because he is not properly assessed, the appraiser is to administer an oath to him, " and interrogate him as to the amount of his sales for the previous year, and if the appraiser shall be satisfied upon such investigation that such person or firm is not properly assessed, he shall increase or reduce the assessment, as the case may be; and in all cases the persons or firms so assessed, if they are

dissatisfied with the decision of the appraiser, shall have the right of appeal to the judges of the court of common pleas of the proper county, who shall in such case finally determine the same." Section 8 provides : " The appraisers so appointed shall furnish to the treasurer of the proper city or county, a certified list of the dealers aforesaid, with the classification as made out by them or determined by the judges of the court on appeal, as aforesaid; and the said treasurer shall within twenty days thereafter transmit to the auditor general a copy of such list, and shall receive and collect, together with the fees of the appraiser and his own fee, the sums to be paid by such dealers for their licenses in the manner directed by law." So far as we have been able to discover this is the first act where the designation of the officer appears as the " appraiser of mercantile taxes," and where his duties are clearly defined. By the 12th section of the Act of April 22, 1846, P. L. 486, the provisions of the 5th, 6th, 7th and 8th sections of the act of 1845, the substance of which is just recited, were " extended to the remaining counties within the commonwealth, Provided, however, that the commissioners of each county shall appoint the appraiser of mercantile taxes for such county." By the 18th section of the Act of April 10, 1849, P. L. 570, the provisions of the act of 1841 were extended to real estate brokers and to merchandise brokers. Then came the Act of May 15, 1850, P. L. 772, the 7th section of which changed the payment of a fixed fee to a commission upon the amount of their annual business, which commission was fixed at three per cent. The 8th section of this act required the appraisers of mercantile taxes to " ascertain and assess the several brokers aforesaid according to the amount of business done by them respectively in the same manner as is required of them with regard to vendors of merchandise; and the said several brokers shall be entitled to the same proceedings on an allegation that they are not properly taxed as are now provided by the 7th section of the said act of 1845."

Thus stood the law in reference to this subject until the year 1867, when the Act of March 30, P. L. 630 was passed. This act made the select council of the city of Scranton commissioners for the purpose mentioned in the 6th section of the said act, and then in the 7th section provided, inter

alia, as follows: "That the said commissioners shall appoint one suitable person as appraiser of mercantile taxes within said city, which taxes shall be paid to the treasurer of said city, who shall issue licenses therefor, under the same regulations as are prescribed in relation to the appraisers and treasurers of counties, and all appeals in relation to the same shall be determined in the mayor's court for the city of Scranton." In view of this provision requiring appeals of aggrieved parties to be determined in the mayor's court for the city of Scranton, it is well to observe that that court was abolished by the constitution and schedule thereto, which went into effect on the 1st day of January, 1874, and by the Act of May 14, 1874, P. L. 139. Section 1 of article V. of the constitution enumerates the courts in which the judicial power of the commonwealth shall be vested, and section 11 of the schedule provides: "All courts of record and all existing courts, which are not specified in this constitution, shall continue in existence until the first day of December in the year one thousand eight hundred and seventy-five, without abridgment of their present jurisdiction, but no longer." The Act of May 14, 1874, P. L. 139, sec. 1, abolished all courts not specified in the constitution: Com. v. Hartranft, 77 Pa. 154. Then came the Act of April 20, 1887, P. L. 60, the 3d section of which is as follows: "The appointment of mercantile appraisers shall be made, annually, by the county commissioners, except in cities of the first-class, where the auditor general and the treasurer of the city are authorized and required to appoint five suitably qualified citizens, all of whom shall not be of the same political party, and the term of office of said appraisers shall be three years. The accounts for advertising mercantile lists and all other state accounts shall be audited by the auditor general." The court below came to the conclusion that this section of this act of 1887 repealed the provisions of the 7th section of the act of March 30, 1867, quoted above, held that the receipt offered in evidence was not a license and entered judgment for defendant *non obstante veredicto.*

Appellant insists that the third section of the act of 1887, providing that "the appointment of mercantile appraisers shall be made annually by the county commissioners, except in cities of the first-class" does not repeal the provisions of

section 7 of the act of 1867, at least in so far as they re late to the duties of the city treasurer. For this he relies upon the rule that a general statute, without negative words, does not repeal a special or local statute, unless there is a strong repugnancy or clear inconsistency between them. This rule is certainly well established: Brown v. County Commissioners, 21 Pa. 37; Rymer v. Luzerne County, 142 Pa. 108. It is also clear, however, that the intention of the legislature, as disclosed by the language of the acts under consideration and by the course of legislation on the subject, must prevail. If the court is satisfied that it was the legislative intention that there should be a repeal it will be so held, even though there are no negative words in the general statute. This rule is well expressed in McLeary v. Allegheny County, 163 Pa. 578, as follows: " The rule of construction on this subject has been stated in Johnston's Estate, 33 Pa. 511, where it is held, following Harcourt v. Fox, 1 Shower's R. 506, 520, an affirmative statute, introductive of a new law on the same subject, does imply a negative of the former law, if they are repugnant. Or, as stated in Dillon on Municipal Corporations, sec. 54, for which he cites cases in our own and many other states: ' It is a principle of very extensive operation, that statutes of a general nature do not repeal by implication charters and special acts passed for the benefit of particular municipalities; but they do so when this appears to have been the purpose of the legislature. If both the general and the special acts can stand, they will be construed accordingly. If one must give way, it will depend upon the supposed intention of the lawmaker, to be collected from the entire course of legislation, whether the charter is superseded by the general statute, or whether the special charter provisions apply to the municipality, in exclusion of the general enactments.' " See also McHenry's Petition, 6 Pa. Superior Ct. 464.

Moreover, it is to be observed that this rule is not applied as rigorously by the courts when considering legislation, whose purpose is to bring about uniformity in the affairs of cities, counties, boroughs and townships throughout the state. In Com. v. Macferron, 152 Pa. 244, the court held that the rule was not applicable to classification acts, and that a city which passed by increase of population from one class to another lost

the system for the levy and collection of taxes which it had in
its old class, and acquired the system in the new class into
which it came, even though the general act establishing the
system for the new class contained no negative words. In
Quinn v. Cumberland County, 162 Pa. 55, it was held that an
act enabling borough councils through the different counties
of the state to establish boards of health repealed an earlier
special act relating to the establishment of a board of health
in the borough of Carlisle. In this case the following language
is used: " In this particular case, it " (meaning the later general
act) "is found to conflict with the system prevailing on the same
subject in one member of the class, to wit, the borough of Car-
lisle. Therefore the latter should give way so as to produce uni-
formity upon this subject among all the members of the class, to
wit, all the boroughs of the Commonwealth." As illustrating
the same principle may also be cited Com. v. Weir, 165 Pa. 284,
and Com. v. Schneipp, 166 Pa. 401. Com. v. Wunch, 167
Pa. 186, bears a close resemblance to the case in hand. In that
case it appeared that section 9 of the Act of March 18, 1852,
P. L. 153, required the collection of state and county taxes in
the townships of Longswamp and Bethel, in Berks county, to
be given to the lowest bidder. The general Act of June 6,
1893, P. L. 333, by its 1st section provided for the triennial
election of tax collectors for every borough and township in
the state, and by its 2d section provided for the repeal of
all acts or parts of acts inconsistent with the provisions of the
1st section. It was held that this general act repealed the
provisions of section 9 of the act of 1852 in reference to
giving the collection of taxes to the lowest bidder, not because
the 2d section of the act of 1893 contained negative words
requiring the repeal, as indeed that could not well be since
these negative words repealed only the provisions of other acts
in reference to the election of tax collectors, but because, since
the adoption of the present constitution, the courts must pre-
sume that it was the legislative intention to bring about uni-
formity in the administration of the affairs of counties, cities,
boroughs and townships, and to aid in securing this result these
statutes must be interpreted in the light of the constitutional
requirements.

We are to be guided by the light of these decisions in decid-

ing upon the effect of the 3d section of the act of 1887. The provisions of this act clearly show that it is a general one intended to apply to the whole state. The preamble indicates two general purposes, one to regulate the publication of the appraiser's lists of names and classifications, the other to provide for the appointment of appraisers. The 3d section requires county commissioners to appoint annually mercantile appraisers "except in cities of the first class." It is evident that this provision is plainly repugnant to and clearly inconsistent with that part of section 7 of the act of 1867 which provides "that the said commissioners" (meaning the select council of the city of Scranton) "shall appoint one suitable person as appraiser of mercantile taxes within said city." But it is argued that, even if this were so, that part of section 7 immediately following which provides that these "taxes shall be paid to the treasurer of said city, who shall issue licenses therefor, under the same regulations as are prescribed in relation to appraisers and treasurers of counties" is still in force. We do not think so. Reading this clause in connection with the preceding part of the sentence in relation to the appointment of a mercantile appraiser it is clear that it refers only to taxes assessed and classified by the appraiser appointed by select council. The city treasurer has nothing whatever to do with any other appraiser. If then there is no longer any appointing power in select council, it would seem clear that there are no duties to be performed by the city treasurer. The power of appointment gone, the duties of the city treasurer, which only arise after the appointment is made, go with it. We have already shown that that part of section 7 providing for an appeal to the mayor's court of the city of Scranton, has been rendered inoperative by reason of the adoption of the constitution and schedule and the act of 1874. The general legislation on the subject of this mercantile tax provides a remedy to every aggrieved broker or dealer by an appeal to the common pleas court. The legislative intent that all dissatisfied brokers or dealers shall have a remedy is so clear that we cannot conclude that the brokers and dealers of the city of Scranton are to be denied that privilege, which would be the case if we were to hold that there had been no repeal of the 7th section of the act of 1867. Being of the opinion that the act of 1887 repeals the 7th section

of 1867, we affirm the judgment entered by the court below in favor of the defendant non obstante veredicto.

Judgment affirmed.