# Graham *v.* Philadelphia, Appellant.

*Municipalities—Philadelphia County prisons—Fixing salaries of prison employees—Public officers.*

1. The board of inspectors of the Philadelphia County prisons and not the city council of Philadelphia has the power to fix the salaries of persons employed in the prisons.

*Statutes—Repeal—Implication—Philadelphia County prisons— Payment of prison employees—Acts of April 14, 1835, P. L. 232; February 2, 1854, P. L. 21; May 21, 1879, P. L. 72; June 11, 1879, P. L. 130; June 1, 1885, P. L. 37; May 9, 1889, P. L. 154, and June 25, 1919, P. L. 581.*

2. The repeal of statutes by implication is not favored.

3. A general statute does not repeal a local statute by mere implication.

4. A general affirmative statute will not repeal a previous particular statute upon the same subject, though the provisions of the former be different from those of the latter.

5. The Act of April 14, 1835, P. L. 232, conferring the power upon the inspectors of the county prisons of Philadelphia to fix the salaries of persons employed in such prisons, has not been repealed either expressly or by implication by the later Acts of February 2, 1854, P. L. 21; May 21, 1879, P. L. 72; June 11, 1879, P. L. 130; June 1, 1885, P. L. 37, May 9, 1889, P. L. 154, or June 25, 1919, P. L. 581.

6. In determining the question whether the Act of 1835, has been repealed, the Supreme Court will take into consideration the long practice under the act and the fact that it has been upheld by a number of suits in the local courts of Philadelphia.

Argued November 30, 1926.    Before FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 233, Jan. T., 1926, by defendant, from judgment of Superior Court, Oct. T., 1926, No. 46, affirming judgment of C. P. No. 5, Phila. Co., Sept. T., 1924, No. 5823, for plaintiff in case of Robert Graham v. City of Philadelphia. Affirmed.

Appeal from Superior Court. See 88 Pa. Superior Court 250.

The opinion of the Supreme Court states the facts.

Appeal from judgment of common pleas. Judgment affirmed. Defendant appealed.

*Error assigned* was judgment of Superior Court, quoting it.

*Joseph P. Gaffney,* City Solicitor, with him *James Francis Ryan,* Assistant City Solicitor, for appellant.— The authority given to the inspectors of the Philadelphia County prisons to fix the number of employees and their salaries and compensation by the Act of April 14, 1835, has been repealed by implication by subsequent statutes, and that authority is now vested in city council: Garr v. Fuls, 286 Pa. 137; Jefferson Co. v. Twp., 283 Pa. 126; McCleary v. Allegheny Co., 163 Pa. 578; Com. v. Summerville, 204 Pa. 300; Jadwin v. Hurley, 10 Pa. Superior Ct. 104; Phila. v. Com., 52 Pa. 451.

*M. B. Saul,* of *Saul, Ewing, Remick & Saul,* with him *William E. Mikell, Jr.,* for appellee.—A general affirmative statute will not repeal a previous particular statute upon the same subject, though the provisions of the former be different from those of the latter: Bell v. Allegheny Co., 149 Pa. 381; Com. v. Ruggles, 280 Pa. 568; Bounty Accounts, 70 Pa. 92; Morrison v. Fayette Co., 127 Pa. 110; Brown v. Com'rs., 21 Pa. 37; Com. v. Brown, 210 Pa. 29.

Where the public authorities have construed an act of assembly in a particular way for a long period of years the courts will be slow to adopt another construction: Com. v. Paine, 207 Pa. 45.

OPINION BY MR. JUSTICE SCHAFFER, January 3, 1927:

The question which confronts us on this appeal is whether the board of inspectors of the Philadelphia County prisons or the council of the City of Philadelphia has the power to fix the salaries of persons em-

ployed in the institutions. The court below and the Superior Court held that the power is in the board of inspectors; from this determination the city appeals.

The controversy centers in the proposition whether the Act of April 14, 1835 (1834-5), P. L. 232, has been repealed by subsequent legislation. The city does not contend that there was any direct repeal, but that it has been repealed by implication.

The Act of 1835 is entitled "A supplement to the act entitled an act to provide for the erection of a new prison and a debtors' apartment within the city and county of Philadelphia, and for the sale of the county prison in Walnut Street in said city." The original Act of March 30, 1831 (P. L. 1830-31), 228, provided for the erection of the prison at such place within the city or county of Philadelphia as the commissioners should appoint, and that the title to the tract acquired should be vested in the County of Philadelphia. The supplement provided that the prison to be erected should when completed be known and called by the name of "The Philadelphia County Prison" and should be managed by a board of inspectors consisting of twelve citizens residing in the city or county of Philadelphia. At the time of the passage of this act, the city and county were not coterminus. It is set forth in section 2 that "The inspectors shall annually appoint a superintendent, a matron for the female department, a physician and clerk for the institution, and shall fix their salaries and compensation, as also the salaries or compensation of the keepers and all other persons employed in and about the institution."

The facts admitted at the trial established that the plaintiffs in the eleven suits which had been consolidated were, during the period from January 1, 1924, to June 30, 1924, employed by the inspectors under the authority of the Act of 1835, eight of them as keepers at a salary fixed by resolution of the inspectors at $2,000 per annum; one as assistant physician and apothecary at a salary of $3,000 per annum; one as a physician at a

salary of $3,000 per annum, and one as a clerk at a salary $3,500 per annum.  On November 20, 1923, the salaries fixed by the board as stated were submitted to city council in lieu of salaries theretofore existing and the council was requested by the inspectors to make appropriations for the year 1924 in accordance with the new schedule.  These appropriations were not made, and by ordinance council fixed the salary of each keeper at $1,500, of the assistant physician and apothecary at $2,-500, of the physician at $2,500 and of the clerk at $3,000. After services had been rendered for a period of six months, actions of assumpsit were instituted by the several plaintiffs to recover the difference in the amount of their salaries as fixed by city council and by the board of inspectors.  On the trial the learned president judge of the court below affirmed plaintiffs' point for binding instructions and directed a verdict in their favor for the aggregate amount of their claims.  On appeal to the Superior Court this judgment was affirmed (88 Pa. Superior Ct. 250) and from this action the record is brought to us for review.

The dispute between the prison inspectors and city council as to the right, which each claims, to fix the salaries of employees of the prisons has been much litigated. Seven suits, prior to the one at bar, had been brought in the Common Pleas of Philadelphia, the first one in the year 1898.  In all of them the right of the inspectors to fix the salaries has been sustained.  This circumstance we think has an important bearing when we come to consider the effect of the Philadelphia Charter Act of 1919, P. L. 581, upon the controversy, since at the time of its adoption there had been five decisions of the Philadelphia Common Pleas adverse to the right of city council to fix the salaries.

The main contention of the city solicitor is that the Act of 1835 has been repealed by implication.  He recognizes the legal principle that a general affirmative statute will not repeal a previous particular statute upon

the same subject though the provisions of the former be different from those of the latter (Bell v. Allegheny Co., 149 Pa. 381; Com. ex rel. Schrier v. Ruggles, 280 Pa. 568) but denies the applicability of that principle, and the relevancy of the cases cited, or kindred cases, to the facts and legislation here involved. He urges that this case is governed by other equally sound canons of statutory interpretation, namely, that subsequent statutes intended as a revision of the whole subject-matter and as substitutes for the prior legislation, though they contain no express words of repeal, must on general principles operate to repeal the former act (Garr v. Fuls, 286 Pa. 137; Com. v. Curry, 285 Pa. 289, 294; Jefferson Co. v. Rose Twp., 283 Pa. 126; Davison v. Erie, 274 Pa. 523; Murdoch v. Biery, 269 Pa. 577); that statutes of a general nature repeal by implication charters and special acts passed for the benefit of particular municipalities when this appears to have been the purpose of the legislature, and that the legislative intent manifest in the subsequent comprehensive acts and in the entire course of legislation relating to the government of the City and County of Philadelphia shows a purpose to wipe out the earlier enactment under the principle laid down in Dillon on Municipal Corporations, section 54; 36 Cyc. 1091; McClery v. Allegheny Co., 163 Pa. 578, 584; Com. v. Summerville, 204 Pa. 300; Jadwin v. Hurley, 10 Pa. Superior Ct. 104. Upon these principles, the city solicitor argues that the various acts of assembly beginning with the Consolidation Act of February 2, 1854, P. L. 21, and ending with the Charter Act of June 25, 1919, P. L. 581, clearly show the intention of the legislature to provide a complete and general financial system for Philadelphia, in which the city council shall be supreme both as to revenues and expenditures of city and county. We think this can be admitted and the Act of 1835 be permitted to stand nevertheless. It can well be seen why the legislature in dealing with its creature, the city, might provide for management and control of prisons by

an organization appointed by the courts outside of the agencies of municipal control, recognizing that under modern conditions prison management is one of the most delicate and difficult situations with which government has to deal, and that those charged with its responsibility ought to be unhampered in choosing their employees and in fixing their compensation.  While it is true that, by the Consolidation Act of 1854, the City and County of Philadelphia were made the same geographically, yet account must be taken of the fact that the legislature in thus providing did not wipe out the county, but preserved and continued it as one of the counties of the State.  "So far as concerned revenues, finances and taxation, its powers were transferred to the consolidated city": Phila. v. Com., 52 Pa. 451, 454.  The clear implication is that the county retained all other powers.  It is true that as the result of the Consolidation Act and the subsequent legislation, the money to be raised .and to be appropriated for the salaries of the employees in the prisons must be raised and appropriated by city council. There is nothing anomalous in this situation, however, since in other counties of the State moneys are required to be raised and appropriated by one agency of government and expended by another as in the case of poor directors, whose funds are raised on requisition from them by the county commissioners (Act of May 14, 1925, P. L. 762, section 222), the directors of the poor fixing the compensation of their employees (section 211).

It is argued that the Act of June 11, 1879, P. L. 130, and the Charter Act of 1919 show a plain legislative intent to place with city council such absolute control of expenditure of the moneys of the city, and to take from all existing boards and agencies the right to fix salaries to be paid to their employees, that it must be concluded that the board of prison inspectors lost the power which it possessed under the Act of 1835, and was bound by the appropriations made by city council for the expenses of the county prisons which fixed the salaries of the em-

ployees. A reading of these acts does not carry this conviction to our minds, but, on the contrary, it would seem to us that with the definite provisions of the Act of 1835 staring the draftsmen of the subsequent acts in the face, they must have determined by the language which they wrote into these subsequent statutes that the duties and powers of the prison inspectors should not be interfered with.

It is not without significance that the Bullitt Act of June 1, 1885, P. L. 37, in no way disturbed the functions of the board of prison inspectors but specifically provided (article X, section 1) that "The board of inspectors of the county prisons shall continue as now constituted by law." It is, to say the least, remarkable that had the legislature deemed it wise to take from the prison inspectors the power to fix the salaries of the employees it would not have so provided specifically. The Consolidation Act of 1854 expressly directed that the board of inspectors should "perform all of the duties belonging by law to such office." It makes no other reference to the board. It would seem from the language used in both statutes that there was an express recognition by the legislature at that time that the duties of the board, one of which was the fixing of salaries, should not be disturbed.

In our view, the provisions of the Act of May 9, 1889, P. L. 154, making it lawful for boards of prison inspectors in counties where they existed to fix the salaries of prison employees with the proviso that the act should not apply to counties in which cities are coextensive with counties, do not aid appellant's contention. That was the existing situation in Philadelphia and the act and proviso together brought about a uniform practice throughout the Commonwealth in all the counties where there were prison boards.

Without particularizing their provisions, we think the various statutes to which appellant calls our attention—the Consolidation Act of 1854, P. L. 21; the Act of May

21, 1879, P. L. 72; Act of June 11, 1879, P. L. 130; Act of June 1, 1885, P. L. 37 (Bullitt Bill) ; Act of May 9, 1889, P. L. 154; Act of June 25, 1919, P. L. 581 (Philadelphia Charter Act)—cannot be said to be, either in intendment or scope, enactments which, taken individually or collectively, indicate a purpose to repeal the Act of 1835 as to its feature now under consideration, even though they do have the effect of turning over to city council the management of the fiscal affairs of the city and county and even though their manifest purpose was to put in council's hands the entire fiscal affairs of both governmental divisions. One of the challenging features in the consideration of the problem before us is that, when all the affairs of the city and county came to be overhauled and recreated by the Charter Act of 1919, when every agency and power of the city and county was being examined, provided for and coördinated, no change was made so far as the prison inspectors were concerned. The draftsmen of the act, who were skilled lawyers, knew that disputes had arisen between the prison inspectors and city council as to who should fix the salaries of the prison employees and that it had been determined the year before the charter was enacted that the power was lodged with the inspectors to fix the salaries: Gormley v. City of Phila., 27 Pa. Dist. R. 465 (1918). Notwithstanding this, the law makers did not provide for the repeal of the Act of 1835, and in no way directly curtailed the power of the inspectors.

The repeal of statutes by implication is not favored: Com. ex rel. Schrier v. Ruggles, 280 Pa. 568. A general statute does not repeal a local statute by mere implication: Ibid. "It is a rule of interpretation as old as the common law, and followed in an unbroken line of decisions in this State, that a general affirmative statute will not repeal a previous particular statute upon the same subject, though the provisions of the former be different from those of the latter": Bell v. Allegheny Co., 149 Pa. 381, 383. What was said in Com. v. Brown, 210

Pa. 29, 36, is apposite to this controversy: "Repeal is wholly a question of legislative intent"; and we can find no intent to repeal the Act of 1835 manifest in the general acts relative to the government of the city.

Notwithstanding the able presentation of his side of the controversy by the city solicitor, we find ourselves unable to reach the conclusion he advocates.

The judgment is affirmed.