## Patton, Exrx., Appellant, *v.* Philadelphia.

Argued December 10, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*F. Raymond Heuges,* for appellant.

*Samuel Feldman,* Assistant City Solicitor, with him *Joseph Sharfsin,* City Solicitor for appellee.

OPINION BY KELLER, P. J., March 10, 1937:

This case is similar in some respects to the case of *Taylor v. City of Philadelphia,* 126 Pa. Superior Ct. 196. The plaintiff's right to a judgment is not as clear as in that case, but the underlying principles are the same and, in our opinion, require that the judgment be reversed and the case returned to the lower court for further findings in the light of those principles.

Robert J. Patton was, in November 1927, duly elected a magistrate in and for the City and County of Philadelphia and qualified as such. His term began the first Monday in January, 1928. The Constitution of 1873, as amended in November 1909, provides (Art. V, section 12) that "in Philadelphia there shall be established, for each thirty thousand inhabitants, one court, not of record, of police and civil causes, with jurisdiction not exceeding one hundred dollars; such courts shall be held by magistrates whose term of office, shall

be six years, and they shall be elected on general ticket at the municipal election, by the qualified voters at large; ...... they shall be compensated only by fixed salaries to be paid by said county; and shall exercise such jurisdiction, civil and criminal, except as herein provided, as is now exercised by aldermen, subject to such changes, not involving an increase of civil jurisdiction or conferring political duties, as may be made by law ......" And by section 13, it is provided, "All fees, fines and penalties in said courts shall be paid into the county treasury".

By the Act of May 10, 1927, P. L. 866, section 35 (42 PS 1075) the salary of a magistrate is fixed at $5000 per annum, and by section 27 (42 PS 1067) it is provided that "it shall be the duty of the City of Philadelphia ...... to pay all salaries" of the magistrates. While this is a departure from the constitutional provision that the magistrates' salaries are to be paid by the County of Philadelphia, it has not been deemed to be invalid, for the City and County of Philadelphia are coterminous and in relation to its revenues, finances and taxation all the powers and liabilities of the County of Philadelphia were transferred to the consolidated city: *Graham v. Philadelphia*, 288 Pa. 152, 157, 135 A. 908; *Philadelphia v. Com.*, 52 Pa. 451. Hence where a magistrate *de jure* sued the *City* of Philadelphia for his salary under section 8 of the Act of February 5, 1875,—which fixed the salary at $3,000 per annum to be paid quarterly by the City—he was held entitled to recover, despite the above-recited direction in the Constitution that such salaries were to be paid by the County: *Rink v. City of Philadelphia*, 15 W.N.C. 345, affirmed in *City of Philadelphia v. Rink*, 17 W.N.C. 136. The point was not raised in the present case in the court below or in this court and, in the light of the foregoing case, we shall not apply it without the authority of the Supreme Court.

A magistrate is not, strictly speaking, a city officer. In *Com. ex rel. Graham v. Cameron*, 259 Pa. 209, 102 A. 879, it was held that a justice of the peace was a county officer. See also *Lyons v. Means*, 1 Pa. Superior Ct. 608, 611. They are, in any event, public officers (*Freiler v. Schuylkill County*, 46 Pa. Superior Ct. 58) whose salaries are fixed by Act of Assembly and not subject to be lessened or diminished by any act or ordinance of city council. They are, in no sense, *employes* of the city.

On December 31, 1931 city council enacted an ordinance for the adoption of a financial program for the city for the year 1932, section 9 of which appropriated to the Department of City Commissioners the sum of $5,235,180, of which sum Item A-25 included an appropriation of $6,000 for a chief magistrate and $5,000 for each of 27 magistrates; and a similar ordinance was enacted on January 16, 1933 for the adoption of a financial program for the city for 1933.

Section 31 of these ordinances [1] provided for a reduction in the wages or salary of all per diem or other employes of the city, county or other departments paid out of the appropriations in said ordinance, of ten per centum in 1932 and twenty-three per centum in 1933, and the city controller was directed not to countersign any warrant in excess of the amounts provided by said section.

We have already stated that magistrates are not city employes but are public officers, whose salaries are fixed by the General Assembly and are not subject to reduction by act or ordinance of city council. The ordinances, if intended to apply to magistrates, were without legal effect on their salaries.

Nevertheless the city officials in preparing the monthly payroll sheets, used as the vouchers for the

---

[1] Recited in substance so far as material in the opinion in *Taylor v. City of Philadelphia*, supra.

salaries of the magistrates, deducted ten per centum from the salaries of each magistrate in 1932 and twenty-three per centum in 1933. The method used in making up these payrolls and securing the warrants, and the forms of the payrolls are set out somewhat fully in the Taylor case and need not be repeated here. They are practically the same in this case, except that the appropriation item concerned was A-25, and the magistrates appointed a different person their agent to receive the warrant and distribute the money among them. In this case, however, no formal notice of dissent or disavowal was typewritten on the face of the payroll and signed by the magistrates, as had been done by the registration commissioners in the Taylor case. Just as in that case, however, the payroll signed by the magistrates did not purport to be in full of their salary, but only authorized their agent to collect from the city controller the sums set forth on the payroll. Patton died on November 16, 1933. His executrix brought this action to recover the sum of the amounts thus deducted from his salary, plus his salary for December, 1932, no part of which had been paid, and for which the city admitted its liability. The case was heard by Judge GLASS, without a jury, who found for the plaintiff in the amount of $440.26 representing the unpaid salary for the month of December, 1932, with interest, the amount admitted to be due by the city, but refused to find for the plaintiff for any of the monthly deductions from her husband's salary. The plaintiff appealed from the judgment entered on this finding.

The ground upon which the trial judge based his finding was that the magistrate by signing a monthly payroll which authorized the agent to collect a reduced amount from the city controller, had waived his right to demand the unpaid portion of his salary fixed by Act of Assembly.

We have discussed this question at some length in

the Taylor case and, without repeating what we said there, we are of opinion that the mere acceptance by a *public officer* of less than the salary fixed by *statute* as belonging to his office does not constitute a waiver of his right or estop him from recovering the balance unpaid. The weight of authority in this and other jurisdictions is opposed to the view taken by the court below. The citations supporting our opinion are given in the Taylor case, and the cases relied on by the court below and the appellee are discussed and distinguished in that case.

We pointed out, however in that case, that, in our view, there is no public policy of this Commonwealth, which prevents a municipal, county or state officer, in times of public distress, from voluntarily donating to his city, county or state such part of his salary or emoluments of office as he sees fit to give up for the relief of the city, county or state. "While his salary may not be diminished during his term of office he can do what he will with his own and if he chooses to devote part of it to the relief of the city or state, and the latter accepts his voluntary donation, no public policy forbids it. *Schuh v. City of Waukesha,* 220 Wis. 600, 265 N. W. 699 (1936)": *Taylor v. City of Philadelphia,* supra.

There is some evidence in this case tending to support such a voluntary relinquishment of part of his salary by Magistrate Patton; but as the case was tried by the city on the theory of waiver or estoppel and reliance was not placed on a voluntary donation by him of his unpaid salary, and no express finding of fact on this very important matter was made by the trial judge apart from the question of waiver, we feel constrained to send the case back for further hearing, that additional findings may be made by the trial judge in the light of our opinion.

The evidence bearing on the voluntary relinquishment

by Magistrate Patton of part of his salary consists of minutes or records of meetings of the Board of Magistrates.

At the meeting of February 17, 1932, at which Patton was present, the minutes show that Chief Magistrate Coward said the purpose of the meeting was to decide whether the magistrates would accept a voluntary cut of ten per cent in salary. Magistrate Fitzgerald said it was his thought that the magistrates should go along by reason of the financial condition of the city and he made a motion that the ten per cent cut be accepted. The motion was seconded by Magistrate Grelis and was finally passed. The minute book fails to show how the individual members voted, but it also fails to show any dissent or disagreement with the proposed action by Magistrate Patton or any one else present. We think it would sustain a finding that Magistrate Patton assented to it, but the minutes are poorly kept and constitute only a framework of the action taken and are not conclusive. If it be shown that Patton objected or voted against the motion, the action of a majority of the Board of Magistrates would not bind him. As we pointed out in the Taylor case the action must be individual and voluntary and it is not governed by majorities. If Patton assented to the cut it would be effective for that year unless or until he gave definite notice of his refusal to be further bound by it. To be a voluntary donation, it must be voluntary and subject to revocation when he sees fit. As we said in the Taylor case, "Any form may be adopted which carries out the intention of the parties, provided it is established to be the voluntary act of the officer, and clearly and definitely proved to be such, and is to continue only so long as he wishes. No *contract* relative to the execution or continuance of such a gift or donation can be enforced. It must be wholly volun-

tary and remain so. It does not arise by waiver or estoppel."

The minutes of the meeting on January 18, 1933 relative to the twenty-three per cent reduction are less satisfactory for the purposes of this case. They do not show whether or not Magistrate Patton was present. All that appears is the following: "A meeting of the Board of Magistrates was held in Room 194 City Hall on January 18th, 1933, Chief Magistrate Coward presiding, who said the purpose of the meeting was to discuss the twenty-three per cent cut in the salary of the Board. If there was any Magistrate who desired to say anything on the question, kindly proceed. Magistrate Lindell said there was nothing they could do about it at this time, and they would be obliged to accept the Ordinance as passed. Magistrate Medway spoke along the same lines. There being no further business, the Board adjourned." No resolution or motion seems to have been put or passed. But it may be possible to show, by other testimony, that Magistrate Patton was present at this meeting and assented to the proposed reduction.

If evidence, satisfactory to the trial judge, of the presence of Patton at this meeting and of his voluntary assent to the proposed reduction is not produced, we are of opinion that the record before us is not sufficient to support a finding of his voluntary relinquishment of the unpaid salary for 1933.

While the only assignments of error pressed by appellant relate to the refusal of the trial judge to find for the plaintiff in the full amount claimed by her and the refusal of judgment for the plaintiff for $2,068.55, non obstante veredicto, the Act of Assembly creating this court (June 24, 1895, P. L. 212, sec. 8) provides that, "It may affirm, reverse, amend or modify any order, judgment or decree as it may think to be just, or it may return the record for further proceedings in

the court below." See *Taggart, Ins. Commr. v. De Fillippo,* 315 Pa. 438, 440, 173 A. 423.

We think that justice requires that the judgment be reversed and a new trial had in which the questions of fact referred to above may be considered and decided in the light of this opinion.

The judgment is reversed and a new trial awarded.