## Baldi et al. v. White, Controller

*Thomas D. McBride*, for relators.

*Samuel Feldman*, assistant city solicitor, and *Frank F. Truscott*, city solicitor, for respondent.

MILNER, J., February 6, 1945.—Relators in this case, all of whom are employes of the Philadelphia County Prison, have petitioned the court for a writ of alternative mandamus to compel the Controller of the City of Philadelphia to honor the payroll vouchers presented on January 13, 1945, by the Board of Prison Inspectors of the Philadelphia County Prison, covering each of the relators at the salaries fixed by the said board for the period from January 1, 1945, to January 15, 1945, and countersign the warrants presented in the amount of the salaries fixed by the board, and to honor such future payrolls and countersign future warrants presented in accordance with the salaries so fixed by the board, until the amount appropriated by city council for each position is exhausted.

Respondent, by his counsel, the City Solicitor of Philadelphia, has filed a motion to quash the writ of alternative mandamus and dismiss the petition, for the reason that the petitioners have failed to show a legal right to the writ. This motion is now before us for consideration. From the petition filed herein we make the following

*Findings of fact*

1. Relators are employes of the Philadelphia County Prison by appointment of the board of inspectors of the said prison.

2. Respondent, Robert C. White, is the Controller of the City of Philadelphia.

3. The board of prison inspectors has fixed the salary of each of the employes of the Philadelphia County Prison for the year 1945, commencing January 1, 1945, in amounts in excess of the amounts appropriated therefor by the city council for the same period. (The names of the employes (relators herein) and the amounts of their respective salaries, as fixed by the board and as appropriated by the City Council of Philadelphia, are listed and set forth in paragraph 12 of the petition.)

4. On or about September 15, 1944, the board of prison inspectors made a request to the Mayor of the City of Philadelphia for an appropriation sufficient to cover the positions and salaries fixed by the board as set forth in paragraph 12 of the petition. The mayor sent this request to city council, but city council by ordinance dated December 14, 1944, appropriated for each of said positions a salary in a lesser amount than that fixed by the said board (see petition, paragraph 12).

5. On January 13, 1945, the board presented to Robert C. White, Controller of the City of Philadelphia, a payroll covering each of the petitioners for the posi-

tions and at the salaries fixed by the said board as stated in paragraph 12 of the petition, for the period covering January 1, 1945, to January 15, 1945. The said board also submitted to the said city controller a warrant signed by its proper officers with the request that the said warrant be countersigned by the city controller.

6. The city controller refused to honor the said payroll and refused to countersign the said warrant.

## Discussion

To entitle relators to the mandamus, they must show not only rights in themselves but a duty or duties in respondent and the absence of any other legal remedy which is adequate: 11 Pa. Standard Practice 205, sec. 85.

The Act of April 14, 1835, P. L. 232, after providing in section 1 for appointment of a Board of Inspectors for the Philadelphia County Prison, provides in section 2, inter alia, as follows: ". . . the inspectors shall annually appoint a superintendent, a matron for the female department, a physician and a clerk for the institution, and shall fix their salaries and compensation, as also the salaries or compensation of the keepers and all other persons employed in and about the institution."

The Act of June 25, 1919, P. L. 581, commonly known as the Charter Act of Philadelphia, sets forth the duties of the various officials of the city. Section 1 of article XVII of the Charter Act requires that on or before the fifteenth day of October, in each year, the mayor shall furnish to the council certain information to be used by it in making up its budget. Section 2 provides that council shall consider the budget in open session and shall adopt in one ordinance by December 15th a financial program for the ensuing year. Section 4 authorizes appropriations out of the estimated receipts and requires that:

". . . council shall appropriate, before the beginning of the ensuing year, a sufficient amount for the extinguishment of the floating indebtedness (other than that accruing within one year from condemnation of real property) which the city controller may estimate to be outstanding upon the first of January following, for the payment of all lawful obligations due by the city during the fiscal year commencing January first . . ."

The appropriation ordinance of the City of Philadelphia approved December 14, 1944, establishing a financial program for the City of Philadelphia for the year 1945, provides in section 36 thereof as follows:

"No expenditures shall be made and no obligations shall be incurred in any month against any item of appropriation in this Budget Ordinance in excess of one-twelfth of the appropriation without the written approval of the Mayor. A certified copy of such written approval shall be filed with the City Controller by the Mayor, setting forth the amount of excess expenditures or obligations approved by him . . ."

The Act of June 25, 1937, P. L. 2094, which amends section 3 of article XII of the Charter Act of June 25, 1919, defines the powers and duties of the city controller as follows:

"(d) He shall not suffer any appropriation to be overdrawn or the appropriation for one item to be drawn upon for any other purpose or by any department other than that for which the appropriation was specifically made, except on transfers made by ordinance of council."

"(f) If any warrant presented to the city controller contains an item for which no appropriation has been made, or there shall not be a sufficient balance of the proper fund for the payment thereof, or which for any other cause should not be approved, he shall notify the proper department of the fact, and if the city controller

shall approve any warrant contrary to the provisions hereof, he and his sureties shall be individually liable for the amount of the same to the holder thereof."

It is obvious that the controller under the Charter Act as amended is not only without authority, but is expressly forbidden, to approve a warrant drawn in an amount in excess of the appropriation of council; and, by the appropriation ordinance of council, he is prohibited from countersigning warrants for salaries in any month in excess of one twelfth of the appropriation therefor without the written approval of the mayor. This approval he does not have.

The Act of April 28, 1915, P. L. 197, provides:

"The employes of cities of the first class shall be paid semi-monthly, on the first day and the fifteenth day of the month: Provided, This act shall not go into effect until January first, one thousand nine hundred and sixteen."

And the Act of April 23, 1915, P. L. 174, contains a similar provision with respect to employes of counties having a population of over one million inhabitants and who receive an annual salary.

It is also apparent from an examination of the above-mentioned statutes and the ordinance of council that the controller is without any authority in the matter before us to approve a semi-monthly payroll of any employe paid from the city treasury which is in excess of one twenty-fourth of the total annual appropriation for the specific item involved.

While section 3 (g) of the Act of 1937, supra, confers upon the controller the power to require evidence that the amount of a warrant presented to him is justly due; that power is limited to factual inquiry and not to the statutory or legal power of council with respect to appropriating a certain sum as annual compensation for a certain position.

Mandamus is an extraordinary remedy, and will be granted only in cases of necessity and never where

there is doubt as to its necessity or propriety. It is ordinarily the appropriate writ by which a ministerial act or duty is sought to be enforced. When the duty which the mandamus will reach is one of a public nature arising from an office and is ministerial in character, the law must not only authorize the act sought to be enforced but must require it to be done: United States ex rel. McLennan v. Wilbur, 283 U. S. 414. While, in matters of official discretion, mandamus may be resorted to for the purpose of compelling the exercise thereof, the coercive writ of mandamus will not issue to control the exercise of official discretion or judgment, i.e., it cannot be used to direct how the officer's discretion shall be exercised: 34 Am. Jur., Mandamus, sec. 68.

Respondent in this case is not authorized by statutes of this State or the ordinance of council to do the acts which relators seek to have him compelled to do, and is, in fact, by those statutes and the ordinance prohibited from doing them. He has neither the ministerial duty nor the discretion to violate the explicit limitations of his powers and duties. It, furthermore, must be conceded that the controller has no power or duty to appropriate money or to levy taxes to meet the payrolls presented to him in this matter. That is a matter within the province of the city council, and the city council is not a party to this suit. In Shisler v. Philadelphia, 239 Pa. 468, it was held that mandamus does not lie to compel a public officer to do any official act which the law does not impose upon him, or to discharge the duties of his office in a manner not authorized by law, or do any official act which the law does not expressly or by implication require such officer to perform. Therefore, relators have failed to show a duty in respondent to make the payments of salaries to relators in excess of the amounts appropriated therefor by council as periodically apportioned by the statutes and ordinance.

We are also of the opinion that relators have a remedy at law which is specific, complete, and adequate. The real object of relators is to collect salaries. They have a remedy in assumpsit to collect these salaries: Malehorn v. City of Philadelphia et al., 18 D. & C. 148; Underwood v. Gendell, 227 Pa. 214; Graham v. Philadelphia, 288 Pa. 152. As a matter of fact some of relators, as plaintiffs, have brought suits in assumpsit in a number of the Courts of Common Pleas of Philadelphia County for the difference between the salaries fixed by the board and those appropriated by council, and the judgments of our courts have been uniformly in favor of the plaintiffs.

It has also been suggested at the argument in this matter that declaratory judgment proceedings could be utilized to save a multiplicity of suits, but we are not called upon to decide the propriety of such proceedings here.

Relators seek not only to compel the controller to countersign warrants for salaries which they claim are now due to them, but also to countersign warrants in the future for the respective salaries fixed by the Board of Prison Inspectors for each of the relators until the appropriation by council is exhausted. This requires the court to assume or prophesy the future actions that will be taken by the controller. Inasmuch as we are of the opinion, for the reasons here stated, that relators are not entitled to a writ of alternative mandamus in the case, we are not called upon to decide the propriety of a mandamus as to the future acts of the controller. However, Judge Parry in Horinstein v. Owen, Director, Department of Health of the City of Philadelphia, C. P. No. 1, September term, 1943, no. 1351, held that a mandatory injunction would not lie to control the future actions of the defendant. We therefore, make the following

*Conclusions of law*

1. Respondent has no duty to honor the payroll vouchers presented by the Board of Prison Inspectors

which are for salaries of employes of the Philadelphia County Prison which are in excess of the amounts appropriated therefor by city council, nor to countersign warrants therefor.

2. The only relief sought by relators in their petition is for the recovery of salaries.

3. For such recovery, relators have a specific, complete and adequate remedy at law.

4. Mandamus is not a proper remedy in this case.

5. The prayer of the petition should be refused.

We accordingly make the following

### Order

And now, February 6, 1945, respondent's motion to quash the writ of alternative mandamus in this case is granted, and the said writ is quashed and the petition filed herein is dismissed.