## Baldi et al. v. City of Philadelphia

Thomas D. McBride, for plaintiffs.

Frank F. Truscott, city solicitor, and Samuel Feldman, assistant city solicitor, for defendants.

McDevitt, P. J., May 18, 1945.—This is a case stated in which both the plaintiffs and defendant have agreed upon the facts set forth in the statement of claim.

While much extraneous matter has been injected by defendant in argument, there are three questions to be determined, and the determination of those answers the question of law. They might be set forth as follows:

1. Is section 2 of the Act of April 14, 1835, P. L. 232, 61 PS §624, constitutional? It reads as follows:

"The inspectors shall annually appoint a superintendent, a matron for the female department, a physician and a clerk for the institution, and shall fix their salaries and compensation, as also the salaries or compensation of the keepers and all other persons employed in and about the institution."

2. Did the board of inspectors have the right to fix a salary and maintenance for the superintendent?

3. Did the board of inspectors, after having met in January 1944, and fixing the salary of the superintendent at $8,000 and maintenance at $2,000, have the right to rescind that action on March 27, 1944, and fix the salary of the superintendent at $10,000 per annum starting April 1, 1944?

The constitutionality of the Act of 1835 has never been questioned, and while it may be in conflict with the Constitution of 1874, it was in harmony with the Constitution of 1790 in force and effect at the time of its enactment.

This act has been construed recently by both the Superior and the Supreme Courts of Pennsylvania, and the learned opinion of Judge Gawthrop in Graham v.

City of Philadelphia, 88 Pa. Superior Ct. 250, was affirmed in an opinion by our former Chief Justice Schaffer in Graham v. Philadelphia, 288 Pa. 152. At page 155, Mr. Justice Schaffer said:

"The dispute between the prison inspectors and city council as to the right, which each claims, to fix the salaries of employees of the prisons has been much litigated. Seven suits, prior to the one at bar, had been brought in the Common Pleas of Philadelphia, the first one in the year 1898. In all of them the right of the inspectors to fix the salaries has been sustained. This circumstance we think has an important bearing when we come to consider the effect of the Philadelphia Charter Act of 1919, P. L. 581, upon the controversy, since at the time of its adoption there had been five decisions of the Philadelphia Common Pleas adverse to the right of city council to fix the salaries."

And again, in discussing the right of the board to fix salaries, Mr. Justice Schaffer said (p. 157):

"It is argued that the Act of June 11, 1879, P. L. 130, and the Charter Act of 1919 show a plain legislative intent to place with city council such absolute control of expenditure of the moneys of the city, and to take from all existing boards and agencies the right to fix salaries to be paid to their employees, that it must be concluded that the board of prison inspectors lost the power which it possessed under the Act of 1835, and was bound by the appropriations made by city council for the expenses of the county prisons which fixed the salaries of the employees. A reading of these acts does not carry this conviction to our minds, but, on the contrary, it would seem to us that with the definite provisions of the Act of 1835 staring the draftsmen of the subsequent acts in the face, they must have determined by the language which they wrote into these subsequent statutes that the duties and powers of the prison inspectors should not be interfered with.

"It is not without significance that the Bullitt Act of June 1, 1885, P. L. 37, in no way disturbed the func-

tions of the board of prison inspectors but specifically provided (article X, section 1) that 'The board of inspectors of the county prisons shall continue as now constituted by law.' It is, to say the least, remarkable that had the legislature deemed it wise to take from the prison inspectors the power to fix the salaries of the employees it would not have so provided specifically. The Consolidation Act of 1854 expressly directed that the board of inspectors should 'perform all of the duties belonging by law to such office.' It makes no other reference to the board. It would seem from the language used in both statutes that there was an express recognition by the legislature at that time that the duties of the board, one of which was the fixing of salaries, should not be disturbed.

"In our view, the provisions of the Act of May 9, 1889, P. L. 154, making it lawful for boards of prison inspectors in counties where they existed to fix the salaries of prison employees with the proviso that the act should not apply to counties in which cities are co-extensive with counties, do not aid appellant's contention. That was the existing situation in Philadelphia and the act and proviso together brought about a uniform practice throughout the Commonwealth in all the counties where there were prison boards."

It has been determined by both the Superior and the Supreme Courts that the Act of 1835 has not been repealed and the question of its constitutionality has been referred to in another part of this opinion.

We must not lose sight of the fact that legislation is presumed to be constitutional until the contrary clearly appears, and the view of the courts of this county is best evidenced by the fact that practically all of them from time to time have approved cases stated similar to the one at bar: C. P. No. 1, June term, 1940, no. 3404 et seq.; C. P. No. 6, March term, 1941, no. 425; C. P. No. 2, June term, 1941, no. 584; C. P. No. 4, December term, 1941, no. 1867; C. P. No. 7, March

term, 1942, no. 3692, and nine separate cases as of September term, 1943, one of which was no. 1991 in C. P. No. 1, decided by Sloane, J., and affirmed by the court in banc of C. P. No. 7: Commonwealth ex rel. Margiotti v. Sutton et al., 327 Pa. 337; Wilson et ux. v. Philadelphia School District et al., 328 Pa. 225; Poor District Case (No. 1), 329 Pa. 390; Dauphin County Grand Jury Investigation Proceedings (No. 2), 332 Pa. 342; Girard Trust Company, Trustee's Appeal, 333 Pa. 129.

The authority cited by defendant referring to the granting of legislative or judicial authority to the prison board is rather farfetched, because being a purely ministerial body even the suggestion that indirectly it can levy tax is without merit.

Certainly the presumption in favor of the constitutionality of a statute that has remained unchallenged for 110 years is greater than a new one now taking the acid test.

Attention is called to the reference of the Supreme Court in Wilson et ux. v. Philadelphia School District et al., supra, and its discussion of the application of article 3, sec. 20, of the present Constitution relative to the delegation of legislative powers. The Constitution of 1790 did not contain such a prohibition.

Public policy, as was pointed out by the Supreme Court, dictates that institutions like the one in question can be better run by an outside disinterested commission than a bureau that might be subject to political domination.

In Graham v. Phila., 288 Pa. 152, Mr. Justice Schaffer said (p. 156):

"It can well be seen why the legislature in dealing with its creature, the city, might provide for management and control of prisons by an organization appointed by the courts outside of the agencies of municipal control, recognizing that under modern conditions prison management is one of the most deli-

cate and difficult situations with which government has to deal, and that those charged with its responsibility ought to be unhampered in choosing their employees and in fixing their compensation. While it is true that, by the Consolidation Act of 1854, the City and County of Philadelphia were made the same geographically, yet account must be taken of the fact that the legislature in thus providing did not wipe out the county, but preserved and continued it as one of the counties of the State. 'So far as concerned revenues, finances and taxation, its powers, were transferred to the consolidated city': Phila. v. Com., 52 Pa. 451, 454. The clear implication is that the county retained all other powers. It is true that as the result of the Consolidation Act and the subsequent legislation, the money to be raised and to be appropriated for the salaries of the employees in the prisons must be raised and appropriated by city council. There is nothing anomalous in this situation, however, since in other counties of the State moneys are required to be raised and appropriated by one agency of government and expended by another as in the case of poor directors, whose funds are raised on requisition from them by the county commissioners (Act of May 14, 1925, P. L. 762, section 222), the directors of the poor fixing the compensation of their employees (section 211)."

Salary and compensation are certainly not synonymous terms, and when this statute was enacted conditions were not such that it was necessary to have a Holmesburg Prison even larger than Moyamensing, located in southern Philadelphia.

Defendant does not seriously question the right of the board to permit the superintendent to live outside the walls of the institution, and even if that were strictly enforced prior to the Act of May 24, 1917, P. L. 283, his residence in either prison might have been questioned because there might have been an honest difference of opinion as to which prison should

be designated as the proper place to live. It is essential for the safety of the community that a resident warden be present in both institutions at all times, but it is admitted that physical conditions do not permit two resident wardens and a superintendent of both institutions to reside in the same quarters. If in the wisdom of the board and in the discharge of its ministerial duties it was seen fit or necessary to permit the superintendent to live outside and give up his maintenance which was an emolument to which he would have been entitled within the walls, then in the opinion of this court they have the right to increase his salary to make up the difference.

Defendant on a prior occasion contended that the board of inspectors was compelled to fix salaries and compensation prior to December 15th in each calendar year. In answering this question the Court of Common Pleas No. 7 in a learned opinion by Sloane, J., said:

"Our reply runs that we are not the ones to make the board of prison inspectors act that way. The legislature is the body to do so, and it has not. Thus far no statutory limitation has been imposed upon the time in which the board of prison inspectors is to fix the salaries of prison employees other than that it be done 'annually' (Act of 1835, supra, sec. 2). Nowhere in the City Charter Act is there mandatory provision upon the board to hold its annual meeting to fix salaries prior to the time in which the budget is required to be prepared. The budget provisions impose duties on the mayor, city controller, and city council. They do mention the submission of necessary information by boards, commissions, and other governmental groups from which statements of estimated expenditures may be made up by the mayor. This the board of prison inspectors did, but these provisions do not invalidate expenditures fixed by it at a meeting subsequent to the date of the budget's adoption. Such

invalidity could follow only from a failure to carry out a duty to act within a specific time. On this score, the ceremony of meeting is not the thing. The case of Com. ex rel. Kelley v. Pommer et al., 330 Pa. 421 (1938), relied upon and pointed out as important here by city's counsel, holds that the city council is bound by the express duty imposed by the City Charter Act to adopt a budget within a certain time. No duty to fix salaries before a specific date has been imposed upon the board of prison inspectors by the legislature."

If the Act of 1835 were to be construed as strictly and as negatively as defendant contends, then the board could not fill a vacancy in the event of the death, resignation, or removal of a superintendent, once having taken such action during a calendar year. If defendant's position could be adopted it would paralyze the exercise of any discretion or the discharge of any ministerial duty on the part of the prison board except the mere visiting of the jail. The legislature in its wisdom anticipated conditions under which the number of employes would have to be flexible, and if after having taken action on one occasion it was prevented from doing so until another calendar year, a prison might find itself undermanned or overmanned either at considerable expense to the community or danger to its citizens. It is only when the acts of such a body become arbitrary that the courts will interfere or set them aside. No such contention is made here.

An examination of the sums involved will show how stupid and absurd it is for a councilmanic body to expect to employ competent men under existing conditions at old-fashioned salaries. The courts have all indicated by their disposition of the several cases stated that the increase over the budget was warranted.

The court is of opinion that judgments should be entered in favor of plaintiffs and, therefore, enters the following judgments:

For Frederick S. Baldi, $2,000; Kube Krisch, $1,000; Nettie E. Smith, $350; Howard E. Eastlack, $500; Ralph E. Spangler, $500; S. Morris Smith, $250; Fred Rehmus, $300; Frederick J. Zapf, $300; Silvio Miceli, $900; Robert S. McCabe, $123.30.